IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



FEB 0 2 2018

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| MICHAEL D. CLUTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV **18 CV 310** |
| | ) | |
| SONNY PERDUE, Secretary of Agriculture, | ) | |
| U.S. Department of Agriculture, in his official | ) | |
| capacity | ) | |
| DAX ROBERSON, Special Agent-in-Charge, | ) | |
| U.S. Department of Agriculture, Office of | ) | |
| Inspector General, in his individual and official | ) | |
| capacity | ) | |
| ANN COFFEY, Assistant Inspector General, U.S. | ) | |
| Department of Agriculture, Office of Inspector | ) | |
| General, Office of Investigations, in her individual | ) | |
| and official capacity | ) | |
| PHYLLIS K. FONG, Inspector General, U.S. | ) | |
| Department of Agriculture, Office of Inspector | ) | |
| General, in her individual and official capacity | ) | |
| CHRISTY SLAMOWITZ, Counsel, U.S. | ) | |
| Department of Agriculture, Office of Inspector | ) | |
| General, Office of Counsel, in her official | ) | |
| capacity | ) | |
| LANE TIMM, Assistant Inspector General, U.S. | ) | |
| Department of Agriculture, Office of Inspector | ) | |
| General, Office of Management, in her official | ) | |
| capacity | ) | |
| | ) | |
| Defendants. | ) | |

COMPLAINT

1. This is a civil action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States, through the Age Discrimination in Employment Act ("ADEA"), Family and Medical Leave Act of 1993 ("FMLA"), Privacy Act of 1974 ("Privacy Act") as well as numerous U.S. Department of

Agriculture ("USDA"), Office of Inspector General – Investigations ("OIG-I") implemented and adopted agency policies specifically including those policies addressing Disclosure of Potential Impeachment Information and Agency adoption of the U.S. Department of Justice Giglio Policy based upon case law Brady v. Maryland, 373 U.S. 83, 87 (1967) and Giglio v. United States, 405 U.S. 150, 154 (1972). This is also a request for past incurred attorney's fees under the Civil Rights Attorney's Fees Award Act of 1976, 43 U.S.C. Section 1988, although the Plaintiff is currently representing himself. Supplemental state jurisdiction is invoked.

2. The jurisdiction of this court is invoked under 28 U.S.C. Section 1331, et seq. 1332, et seq., and 1343, et seq., this being an action authorized by law to redress deprivation under color of law, statute, ordinance, regulation, custom and usage of a right privilege and immunity secured to Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction also exists under the following: Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611 et seq.; and The Privacy Act of 1974, 5 U.S.C. § 552a et seq.

3. That the matter in controversy exceeds, exclusive of interest and cost, the sum or value of Seventy Five Thousand Dollars ($75,000) (28 U.S.C. Section 1331).

4. During all times mentioned in this complaint, Plaintiff Michael D. Clutter was a special agent with the U.S. Department of Agriculture, Office of Inspector General – Investigations, located in Shenandoah, Texas, a division of the Department of Agriculture, of the United States of America, until his retirement became effective on December 31, 2017. The Plaintiff attained 53 years of age during January 2018 which mandatory retirement age for a special agent position is 57 years of age. Plaintiff was married on January 19, 2004, to Laurie C. Gray, also a special agent with the U.S. Department of Agriculture, Office of Inspector General –

2

Investigations, located in Shenandoah, Texas, during the time cited in this complaint. Plaintiff

alleges all required administrative remedies have been exhausted.

_____

Filing of Whistleblower complaint dated November 28, 2016, with Office of Special Counsel
and having subsequently notified Agency of the Whistleblower complaint filed by Plaintiff.

Freedom of Information Act individual request made by Plaintiff dated December 9, 2016, which
the Agency failed to provide or deny any claimed exemption(s) on any of the requested records
as of the time of filing this complaint.

Privacy Act individual request made by Plaintiff dated December 9, 2016, which the Agency
failed to provide or deny any claimed exemption(s) on any of the requested records as of the time
of filing this complaint.

Filing of informal EEO complaint dated December 9, 2016

First ADR meeting conducted on February 17, 2017, in response to informal EEO complaint,
which resulted in Agency requesting additional time to locate, retrieve and review a copy of the
informal EEO complaint and to obtain additional information regarding allegations listed in the
informal EEO complaint. The Agency was provided with another copy of the informal EEO
complaint.

Second ADR meeting conducted on March 9, 2017, in response to informal EEO complaint after
Agency conducted its purported review of the allegations listed in the informal EEO complaint.

Filing of formal EEO complaint, March 21, 2017

Formal charge filed with EEOC on August 23, 2017, after Agency conducted EEO investigation.

Notice of Intent to Sue Under the ADEA was provided to EEOC on November 30, 2017, that
Plaintiff intended on filing legal action in U.S. District Court. The Plaintiff received notice from
EEOC on December 13, 2017, the Notice of Intent to Sue document was received. As of the
filing date of this complaint, the Plaintiff never received any response from the Agency in any
attempt(s) to resolve the matter.

5. At all times mentioned herein, the individual Dax Roberson, was a resident of the

State of Texas, and was employed with the U.S. Department of Agriculture, Office of Inspector

General – Investigations, located in Temple, Texas, as an Assistant Special Agent-in-Charge

("ASAC") until approximately February, 2016, when Dax Roberson was promoted as the Special Agent-in-Charge ("SAC") which he has fulfilled to date.

COUNT I

AGE DISCRIMINATION IN EMPLOYMENT ACT -- 29 U.S.C. § 621 et seq.

6. The Age Discrimination in Employment Act of 1967 ("ADEA") requires that "[a]ll personnel actions affecting employees...at least 40 years of age...be made free from any discrimination based on age". Plaintiff files this ADEA lawsuit because the agency has intentionally and willfully refused to abide by the ADEA, 29 U.S.C. Section 633a, by knowing its conduct violated the ADEA and or showed reckless disregard for the ADEA.

7. Plaintiff alleges that the United States Department Agriculture ("USDA"), Office of Inspector General ("OIG" and also referred herein as "Agency") willfully, intentionally and knowingly created and fostered a discriminatory, harassing and hostile work environment based upon age in violation of the ADEA as a result of ASAC/SAC Dax Roberson's managerial direction and conduct where (1) the conduct becomes a condition of continued employment or unreasonable interference with Plaintiff's work performance, and/or (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, which such type of working environment is further cited and prohibited by Agency Policy IG-3780. The Plaintiff further alleges that ASAC/SAC Roberson's managerial direction and conduct further resulted in an adverse employment action of a "constructive discharge" work environment in attempting to have the Plaintiff resign or retire due to intolerable work conditions. The Plaintiff further alleges that Agency officials, specifically including Sonny Perdue, Secretary of Agriculture, USDA, Washington, D.C.; Phyllis K. Fong, Inspector General, Office of Inspector General ("OIG"), USDA, Washington, D.C.; Christy Slamowitz, Attorney, Office of Counsel,

4

OIG, USDA, Washington, D.C.; Lane Timm, Assistant Inspector General, Office of Management, OIG, USDA, Washington, D.C.; and Ann Coffey, Assistant Inspector General, Office of Investigations, OIG, USDA, Washington, D.C.; among other Agency officials, were made aware of the Plaintiff's "constructive discharge" environment adverse employment action and failed to address or provide any of the Plaintiff's requested injunctive relief, but instead, knowingly failed to acknowledge receipt of Plaintiff's reported complaints and willfully condoned and allowed SAC Dax Roberson's managerial discriminatory and disparate decisions/actions and oral and written direct order(s) to remain in effect which further nurtured SAC Dax Roberson's "constructive discharge" environment for the Plaintiff.

8. Plaintiff alleges that the following violations of laws, rules, regulations and/or Agency policies were committed by the Agency as a result from the knowing and willful managerial actions implemented by ASAC/SAC Roberson and the actions/inactions taken by Phyllis K. Fong, Christy Slamowitz, Lane Timm and Ann Coffey by willfully and knowingly failed to acknowledge receipt of Plaintiff's reported complaints and having willfully condoned and allowed SAC Dax Roberson's managerial discriminatory and disparate decisions/actions and oral and written direct order(s) to remain in effect which further nurtured SAC Dax Roberson's "constructive discharge" work environment adverse employment action for the Plaintiff.

Section A. -- Agency's censoring, admonishment and continued refusal to allow Plaintiff to follow and abide by the requirements contained in Agency Policy IG-1518, Disclosure of Potential Impeachment Information and the Agency's adoption of the U.S. Department of Justice Giglio Policy based upon case law Brady v. Maryland, 373 U.S. 83, 87 (1967) and Giglio v. United States, 405 U.S. 150, 154 (1972). (Time Period of Allegation: March 2013 to Present).

9. On November 8, 2012, an on-going criminal investigation case was re-assigned to Special Agent Michael D. Clutter (Plaintiff) which had initially been worked by another agency special agent, herein referred to as "Special Agent RV" under an existing case number. This case

was re-assigned to Plaintiff after Plaintiff learned that Special Agent RV was having employment related problems or issues with the Agency which resulted in special and unusual directions issued from then, ASAC Dax Roberson, such as removing all shotgun, semi-automatic and automatic weapons from the office that Special Agent RV had or may have had access to, etc. The Plaintiff then began reviewing the evidence and work papers Special Agent RV had obtained, created and or maintained as part of the Agency case work file on this bribery type investigation. This cursory review disclosed many noted inconsistencies and problems in the case evidence and work papers that included (1) missing/misplaced information such as serial numbers of cash evidence which no evidence copies of the cash had been made, (2) cash evidence that had not been accounted for and/or entered into evidence, (3) questionable handling/storage of known writings of subject, (4) Memorandum of Interview forms that listed incorrect phone numbers which were part of evidence and/or contained inconsistent recorded witness statements, in addition to routinely prepared case notes being missing or non-existent, (5) the Plaintiff had questions regarding the accuracy of the information describing consensually monitored undercover transaction(s), etc., (6) concerns about the consensually monitored audio/video recordings between Special Agent RV and the subject/defendant having been "encrypted" by Special Agent RV which Special Agent RV had "forgotten" the password(s), and (7) the Plaintiff had several questions regarding the credibility and or ability of the initial case agent, Special Agent RV, who was the only Agency employee to have direct knowledge on many of the initial case investigative findings or issues. Several email communications exist between the Plaintiff and ASAC Roberson in that many or most of the inconsistencies stated above were discussed which further substantiates the argument that ASAC Roberson had direct knowledge of problems/issues/concerns with the initial investigation conducted by Special Agent RV and the required disclosure(s) of any potential "Giglio" and or

"Brady" information that should be made known to any Assistant U.S. Attorney and/or Assistant District Attorney, etc., who would make any case prosecution determination. The Plaintiff brought most, if not all, of these concerns/findings to the attention of ASAC Roberson on more than one occasion prior to March 27, 2013, and stated that the Plaintiff believed, or had reason to believe, there could be potential "Giglio" and or "Brady" issues that were required to be disclosed to the Assistant U.S. Attorney and or prosecutor such as reliability of evidence and credibility of a Government case witness, which in this case, was the initial assigned case agent, Special Agent RV. On all occasions, ASAC Roberson censored, discouraged and directed Plaintiff **to not make any such Giglio and or Brady disclosure(s)** to any prosecutor, and on one occasion made reference there was not "anything in writing" in Special Agent RV's employee file. It was soon thereafter, that ASAC Roberson directed the Plaintiff to conduct a "whole new case" regarding the bribery allegations which the "new" case was subsequently assigned to the Plaintiff. The evidence and documentation generated from Special Agent RV's initial case was transferred to this "new" case. ASAC Roberson later directed and instructed the Plaintiff that he was not to contact or ask Special Agent RV any questions about the "initial" case worked by Special Agent RV or any questions about evidence, notes, interviews, etc., from the initial investigation.

10. On March 27, 2013, the Plaintiff once again addressed his Giglio and Brady policy responsibility and required disclosure concerns in an email sent to ASAC Roberson with information regarding other assigned case(s) and names of subject(s) and Special Agent RV, etc.,) which the referenced email communication in redacted format is hereby incorporated as part of this Complaint. The Plaintiff discussed the reviewing of the evidence as well as other issue(s), then stated in part:

--Email dated March 27, 2013, 07:05 AM, from Plaintiff to ASAC Roberson:

7

"I still have concerns regarding any possible Brady, Giglio and/or ability/impairment of any Government witnesses that requires the Agency to fully disclose any such knowledge to the DOJ USAO that could have an effect, or perceived effect, regarding the credibility or ability of any of its witnesses. According to a couple of contacts I have made with other AUSAs, it is the Agent's and Agency's duty to make all such disclosures and it is ultimately the decision of the DOJ-USAO whether or not any Brady, Giglio, or credibility, or ability/impairment issues, of any Government witnesses exist that may warrant further disclosure. The mere fact that whether or not "anything is in writing" in an employee's file or other Agency record keeping system does not provide a relief for the Agency of the disclosure requirement(s). My position is that if the Agent/Agency makes the required disclosure and if the DOJ-USAO determines no further disclosures are warranted, then there are no such issues/concerns and both the Agency and Agent have met the requirement, with any possible questions/issues falling on such decision with the USAO-DOJ decision. Please advise on this issue."

11. On March 27, 2013, the Plaintiff received a written email response from ASAC Roberson, stating in part:

--Email dated March 27, 2013, 7:32 AM, ASAC Roberson to Plaintiff

…"As we've discussed (once with Mary) on a handful of other occasions dating back to the Fall, I am fully aware of our responsibilities and have asked that you focus on the investigation, and I will focus on any potential outside factors. If something were needed to be said to DOJ, that would be coming from me, and not you. Therefore, please continue moving forward on your investigation".

---

8

## CLUTTER, MICHAEL

**From:** ROBERSON, DAX
**Sent:** Wednesday, March 27, 2013 10:30 AM
**To:** CLUTTER, MICHALL ✳
**Subject:** Re: Bag Lady & ▉▉

Thanks, Mike.

**From:** CLUTTER, MICHAEL
**Sent:** Wednesday, March 27, 2013 07:41 AM
**To:** ROBERSON, DAX
**Subject:** RE: Bag Lady & ▉▉ ✳

Re: ▉▉ ✳ – At this point in the investigation, I think it may be best to continue participating in the investigation since an expected indictment is near and secondary interviews can be conducted to assist in strengthening the case. I cannot guarantee and expect there will not be any USDA violations or charges, but this may well serve the purpose of trying to mend relationships with a positive outcome for all agencies.

Re: Bag Lady – The case will continue moving forward.

**From:** ROBERSON, DAX
**Sent:** Wednesday, March 27, 2013 7:32 AM
**To:** CLUTTER, MICHAEL
**Subject:** Bag Lady & Varnett

Re: Bag Lady -- As we've discussed (once with Mary) on a handful of other occasions dating back to the Fall, I am fully aware of our responsibilities and have asked that you focus on the investigation, and I will focus on any potential outside factors. If something were needed to be said to DOJ, that would be coming from me, and not you. Therefore, please continue moving forward with your investigation.

Re ▉▉ ✳ - you had asked last month if we should consider closing ▉▉ ✳, which I replied we could if you felt we had nothing. If those insurance claims don't pan out, please advise and I don't mind closing. I just ask that you advise the AUSA and other agencies before we close. We're doing our best to mend some relationships in the Houston area.

Good luck with the surveillance vehicle today.

**From:** CLUTTER, MICHAEL
**Sent:** Wednesday, March 27, 2013 07:05 AM
**To:** ROBERSON, DAX
**Subject:** FW: 3/26/13 telework request

Bag Lady: I am waiting for all of the evidence to specifically include the message(s) from the recorder that Craig sent to IT, etc. Based upon what ▉▉ has stated, I think I have received all of the evidence she thinks she has. Once I receive all evidence and review it, I will then present the case to the AUSA and discuss whether or not it will have any negative effect on ▉▉ if prosecution is pursued at that time. I still have concerns regarding any possible Brady, Giglio and/or ability/impairment of any Government witnesses that requires the Agency to fully disclose any such knowledge to the DOJ USAO that could have an effect, or perceived effect, regarding the credibility or ability of any of its witnesses. According to a couple of contacts I have made with other AUSAs, it is the Agent's and Agency's duty to make

1

9

al such disclosures and it is ultimately the decision of the DOJ USAO whether or not any Brady, Giglio, other credibility, or ability/impairment issues, of any Government witnesses exist that may warrant further disclosure. The mere fact that whether or not "anything is in writing" in an employee's file or other Agency record keeping system does not provide a relief for the Agency of the disclosure requirement(s). My position is that if the Agent/Agency makes the required disclosure and if the DOJ USAO determines no further disclosures are warranted, then there are no such issues/concerns and both the Agency and Agent have met the requirement, with any possible questions/issues falling on such decision with the USAO-DOJ decision. Please advise on this issue.

██████████: During the last meeting, it was decided that a few more interviews/contacts of former employee(s) would be conducted which another meeting would then be scheduled to review the results. As it stands now, it appears within the next few months, an Indictment will be pursued regarding the principal(s) primarily on investigative findings/discovery of a non-reported bank account that appears to have federal/state commingled monies transferred to and from individual subject(s) and/or business entities under their control. I will most likely conduct some follow-up interviews regarding some of the disposition of these questioned proceeds such as checks written to companies that appear for personal services, etc., instead of being applied for approved expenses. I expect a meeting to be scheduled within the next few weeks or so. I have failed to find any direct USDA program violation(s) which I questioned if there were any USDA violations since the beginning after Rochelle opened the case. The only possible nexus is regarding some insurance claims made on food spoilage which the insurance companies compensated the subject school/principal subject, which may or may not have been NSLP product. The insurance claim(s) source will most likely be investigated, but not at this immediate time due to desire of USAO for the subject(s) not to have knowledge that the investigation has disclosed the unreported bank account, etc.

**From:** ROBERSON, DAX
**Sent:** Monday, March 25, 2013 3:20 PM
**To:** CLUTTER, MICHAEL
**Subject:** RE: 3/26/13 telework request

Approved

Tomorrow, can you please advise as to where we stand on Bag Lady and ██████?

**From:** CLUTTER, MICHAEL
**Sent:** Monday, March 25, 2013 3:12 PM
**To:** ROBERSON, DAX
**Subject:** 3/26/13 telework request

Per your review and approval, I plan on teleworking on 3/26/13 on duties that include the review of financial records on Te-354-401, as well as case work/file review on Te-2741-108, as well as review SNAP records on suspect stores/areas as time permits. Thanks.

✱ - name of assigned case subject redacted pertaining to another assigned case not relevant to this lawsuit.

▮ - vertical line indicates text pertaining to assigned case Te-2748-1425

RV - "Agent RV"

12. On or about July 23, 2013, the Plaintiff notified Patrick Munday, ASAC, Jackson, MS, of ASAC/SAC Dax Roberson's censorship and direct order for Plaintiff to not disclose all potential Brady and or Giglio information to the prosecutor which ASAC Munday failed to acknowledge receipt of the emails or address the reported incident/violation with the Plaintiff. It should be noted that ASAC Munday was the assigned supervisor of the undercover agent, Laurie C. Gray, who assisted the Plaintiff on this "reassigned" investigation.

13. On or about December 9, 2016, the Plaintiff filed a Whistleblower Complaint with the U.S. Office of Special Counsel regarding alleged violation(s) of OIG Policy IG-1518 committed by ASAC/SAC Dax Roberson which a copy of the Whistleblower Complaint was provided to Agency officials specifically including Christy Slamowitz and Lane Timm. The Agency never acknowledged receipt nor addressed the Whistleblower Complaint and never addressed or granted any of the Plaintiff's requested injunctive relief that specifically requested the Agency to allow the Plaintiff to make all required potential Giglio and Brady disclosure(s) to the prosecutor regarding evidence and documentation generated from the initial investigation. As of this date, SAC Roberson's oral and written direct orders were never rescinded.

14. On April 26, 2017, the Plaintiff refused and admittedly failed to follow SAC Roberson's oral and written direct order(s) to not disclose all potential Giglio and Brady information to the Assistant District Attorney, Harris County District Attorney's Office, Houston, Texas, and made partial disclosure(s) of potential Giglio and Brady information known to the Plaintiff at that time. During this meeting, the Assistant District Attorney stated that most, if not all, of the disclosed documentation and evidence, including statements made by the defendant on consensually monitored recordings, would be disclosed to the defense counsel.

11

The Assistant District Attorney further expressed concern about the credibility/ability of Special Agent RV as a Government witness and ASAC/SAC Dax Roberson being impeached.

15. On or about June 12, 2017, the Plaintiff filed and provided a copy of a Hotline Complaint regarding SAC Roberson's actions with the Agency Office of Compliance which an investigation was conducted. The Plaintiff once again notified Agency officials, specifically including Sonny Perdue, Phyllis K. Fong, Christy Slamowitz, Lane Timm and Ann Coffey, which none of these officials acknowledged receipt of the Hotline Complaint nor granted any of the Plaintiff's requested "injunctive relief" that specifically requested the Agency itself, and the Agency to allow the Plaintiff, to make all required potential Giglio and Brady disclosure(s) to the prosecutor on OIG File No. Te-2748-1425. The Plaintiff also requested to be reassigned under the supervision of an impartial ASAC and SAC which the Agency once again failed to acknowledge receipt or to address the Plaintiff's reassignment request.

---

On or about June 12, 2107, the Plaintiff also filed a Hotline Complaint with the Office of Compliance and Integrity ("OCI"), OIG, USDA, which the Plaintiff was notified that a Hotline inquiry would be conducted on ASAC/SAC Roberson. The Plaintiff was also cautioned that OCI could not make any recommendations based upon any findings of the Hotline inquiry and that Ann Coffey would be consulted and ultimately make the decision as to whether or not the Agency would take any action(s) regarding any substantiated allegation(s) and violation(s).

16. On August 1, 2017, the defendant of OIG File No. Te-2748-1425 was sentenced in the 209th District Court of Harris County, Texas, Cause Number 143443201010, which form Texas Code of Criminal Procedure Article 39.14 Joint List of Requested and Released Discovery was filed that listed the evidence items disclosed by the Plaintiff to the Assistant District Attorney on April 26, 2017, which specifically listed and included the Plaintiff's filed Whistleblower Complaint with the Office of Special Counsel and ASAC/SAC Roberson's direct email order dated March 27, 2013.

17. On or about August 24, 2017, the Plaintiff filed and provided a copy of an Addendum to the Hotline Complaint pertaining to the sentencing of the defendant in the referenced investigation. The Plaintiff once again notified Agency officials, specifically including Sonny Perdue, Phyllis K. Fong, Christy Slamowitz, Lane Timm and Ann Coffey, which none of these officials acknowledged receipt of the Addendum to the Hotline Complaint nor granted any of the Plaintiff's requested "injunctive relief" that specifically requested the Agency itself, and the Agency to allow the Plaintiff, to make all required potential Giglio and Brady disclosure(s) to the prosecutor on the referenced investigation in addition to the Plaintiff being reassigned to an impartial ASAC and SAC.

18. Based upon Plaintiff's approximate 30 years of work experience, recent training received from the Agency counsel during September 2016 and June 2017 regarding Agency Giglio and Brady material policy which SAC Roberson was also present, review of Agency Disclosure of Potential Impeachment Information Policy IG-1518 and the Agency's adoption of the Department of Justice Giglio Policy, the Plaintiff believes that violation(s) of these policies were committed by the Agency through ASAC/SAC Roberson's direction and abuse of authority, along with the condoning of such direction and abuse of authority by Agency officials Sonny Perdue, Phyllis K. Fong, Christy Slamowitz, Lane Timm and Ann Coffey, based upon ASAC/SAC Roberson having censored, prohibited and directed the Plaintiff from disclosing information and/or concerns on more than one occasion, and subsequently admonishing the Plaintiff for requesting permission or authorization to make required potential "Giglio" and "Brady" information disclosure(s) to the assigned Assistant U.S. Attorney, U.S. Attorney's Office, Southern District of Texas, Houston, TX. It is the Plaintiff's position that the Plaintiff should have been allowed to make such disclosure(s) to the U.S. Attorney's Office and/or Harris

County District Attorney's Office, Houston, TX, in accordance with the Agency Disclosure of Potential Impeachment Information Policy and the adopted U.S. Department of Justice Giglio policy disclosure requirement. The Plaintiff further believes that such disclosure(s), even if found or determined not to be "Giglio" or "Brady" issues, should have been made at the time the case was initially presented to the U.S. Attorney's Office, Houston, TX, and subsequently the Harris County District Attorney's Office, Houston, TX, and any time(s) thereafter since and during the defendant was under criminal indictment.  These violation(s) had the effect of "covering" up the fact that the Agency, under then ASAC Roberson's direction, had begun and conducted one criminal investigation on the defendant which was done "poorly" at best, which the Agency then decided to conduct a second "better" criminal investigation on the same defendant and only report/disclose the evidence, results and existence of the second "better" investigation.  It should be further noted, that ASAC Roberson was promoted during the early part of 2016 to the position of Special Agent-in-Charge who now oversees all criminal cases worked out of the USDA-OIG-I Southwest Region consisting of several states.

19.  The Plaintiff further alleges that as a result of ASAC Roberson's managerial action(s), the following negative effect(s) resulted:  (1) Violation of Agency Policy IG-1518; (2) Violation of Agency's adoption of U.S. Department of Justice Giglio Policy; (3) Violation of Defendant's U. S. Constitutional Rights; (4)  During time Plaintiff followed ASAC Roberson's direct order(s), Plaintiff was in violation of Agency Policy IG-1518 and Agency's adoption of U.S. Department of Justice Giglio Policy; (5) ASAC/SAC Roberson and Agency are still currently obligated to follow and are in violation of Agency Policy IG-1518 and the adopted U.S. Department of Justice Giglio Policy regarding duty to make required disclosure(s); (6) Plaintiff and Agency undercover agent were both made vulnerable to civil "Bivens" action(s) filed under

Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), due to initially following ASAC/SAC Roberson's direction; and (7) Credibility of Plaintiff, Agency undercover agent Laurie C. Gray and the Agency was/is damaged due to ASAC/SAC Roberson's abuse of authority regarding his directed censoring and prohibition of required Giglio and Brady disclosure(s) and the Agency's condoning of such actions.

20.    Plaintiff also alleges that SAC Roberson along with Agency officials Sonny Perdue, Phyllis K. Fong, Christy Slamowitz, Lane Timm and Ann Coffey's knowingly and willfully condoned ASAC/SAC Roberson's OIG Policy 1518 violation(s) and that a "constructive discharge" environment was created and fostered by the following: (1) Plaintiff had to violate OIG Policy 1518 to be in "compliance" with SAC Roberson's direct order(s); (2) Plaintiff had to violate and refuse to follow SAC Roberson's direct order(s) in order to follow and make required Giglio and Brady disclosure(s) in accordance with OIG Policy 1518; (3) Plaintiff would have been placed in a position of committing perjury or other violation(s) in order to "conceal" or "cover-up" the initially undisclosed evidence if a hearing or criminal trial would have commenced; and (4) Plaintiff's top-secret security clearance would be jeopardized due to credibility and lack of candor issue(s) Plaintiff would have incurred had Plaintiff followed SAC Roberson's direct order(s) – which any or all of these issues most likely would have resulted in Plaintiff's immediate removal from his special agent position. The Plaintiff further alleges that as of this date, the discriminatory "constructive discharge" environment has continued for the purpose of inducing the Plaintiff to retire based upon his age and "retirement eligibility" status in addition to the Agency's refusal to grant any of the requested injunctive relief and or to rescind SAC Roberson's direct order in violation of Policy IG-1518 which further contributed to the "constructive discharge" environment.

Section B. -- Alleged violations of the Family and Medical Leave Act of 1993 (FMLA), U.S. OPM Family Friendly Leave Policies (FFLP) and Agency Absence and Leave Policy IG-3630 committed by the Agency – (Time Period: Fall 2014 through Present regarding any further disparate treatment or current/past threat(s) made for any future use of leave that SAC Roberson may utilize)

21.     On or about December 12, 2015, the Plaintiff had approximately 1,503 hours of accumulated sick leave.  During October 2015, the Plaintiff developed a health condition consisting of a serious allergic reaction, which this health condition is still being medically treated which the reason(s) or cause(s) are still unknown by the Plaintiff and numerous medical providers.  During the December 2015 time period, the Plaintiff's primary physician, allergist specialist and dermatologist specialist conducted further testing to determine the "ailment cause" and to develop a plan of care to prevent further allergic reactions from occurring.  Both the allergist and dermatologist specialists determined the condition was not a life threatening or debilitating health issue, but rather a serious allergic reaction due to some unknown "cause" or "allergen" which caused severe facial and body swelling along with "weeping" type of skin rashes located on most of Plaintiff's body.  Due to this health issue, the Plaintiff had taken accrued sick leave sporadically during the past several weeks since about October 2015 for physician appointments, medical testing and simply not feeling well which the necessity for used sick leave can be substantiated through medical records documentation and photographs of the Plaintiff's allergic reaction symptoms.  This allergic condition basically consisted of several separate occasions of facial swelling which limited field of vision occurred over a period of 2 to 5 days in addition to a severe rash over most of the body which minimized rash symptoms are still present today.  During this period of receiving medical treatment, the Plaintiff attempted to work on most days since having developed this health issue with the exception of utilizing paid sick leave as described above.

16

22. On December 10, 2015, the Plaintiff was notified by the Agency that he was scheduled to attend a week long training course during January 2016 in Long Beach, CA. Due to (1) continued scheduled medical testing to occur on 12/15/15 and 12/17/15, (2) additional anticipated medical testing to occur during the remaining portion of December 2015 and January 2016 in order to determine and address the health issue "cause", (3) additional follow-up physician office visits to occur during the next upcoming weeks/months, and (4) physician's monitoring of current and anticipated prescription medications changes/adjustments, the Plaintiff requested a reasonable accommodation that would not increase Agency training expenses from his direct supervisor, ASAC Dax Roberson, to consider re-scheduling the Plaintiff's attendance for a later training session to be held during Spring 2016. A copy of the written email requesting the reasonable accommodation to attend a later training class along with written dialogue between the Plaintiff and ASAC Roberson along with ASAC Roberson's final reply and written decision regarding this matter is hereby incorporated and made part of this complaint. The written correspondence contained in the "string" of email communications included the following:

-- From Michael Clutter to ASAC Roberson, dated Thursday, December 10, 2015, 6:31 AM

"Will you please schedule me for the next Kansas City session for this training course? I am still trying to address an on-going health issue which I will submit sick leave requests for 2 days next week for additional testing. Thanks."

-- From ASAC Roberson to Michael Clutter, dated Thursday, December 10, 2015, 6:49 AM

"This is more than a month out, Mike. You need to plan on attending."

-- From Michael Clutter to ASAC Roberson, dated Thursday, December 10, 2015, 6:57 AM

17

18

"This issue has been going on for about the past 10 weeks and still not cured.  I apologize this health issue is still on-going and further testing to be scheduled.  I don't understand why I could not be scheduled for the next available training.

-- From ASAC Roberson to Michael Clutter, dated Thursday, December 10, 2015, 8:43 AM

"You already cancelled in Fall 2014 (Phoenix) due to family health issues.  We can't keep postponing this, Mike.  It's mandatory for everyone, whether we like it or not.  If you're physically able to function in the field, conduct UC operation, execute search warrants, qualify with your firearms, etc., then there is no reason you can't sit in a class for three days and listen to a lecture.  If you present to me a doctor's note indicating you cannot travel and sit in a class, then you will be excused.  Such a letter though could be perceived as detrimental to your physical performance as an 1811 though."

_____

**CLUTTER, MICHAEL**

From:           ROBERSON, DAX
Sent:           Thursday, December 10, 2015 6:43 AM
To:             CLUTTER, MICHAEL
Subject:        RE: IGCIA - PRTP-1601 (CA) Reporting Instructions - Periodic Refresher Training
                Program

You already cancelled in Fall 2014 (Phoenix) due to family health issues. We can't keep postponing this, Mike. It's mandatory for everyone, whether we like it or not. if you're physically able to function in the field, conduct UC operation, execute search warrants, qualify with your firearms, etc., then there is no reason you can't sit in a class for three days and listen to a lecture. If you present to me a doctor's note indicating you cannot travel and sit in a class, then you may be excused. Such a letter though could be perceived as detrimental to your physical performance as an 1811 though.

**From:** CLUTTER, MICHAEL
**Sent:** Thursday, December 10, 2015 6:57 AM
**To:** ROBERSON, DAX
**Subject:** RE: IGCIA - PRTP-1601 (CA)-Reporting Instructions - Periodic Refresher Training Program

This issue has been going on for about the past 10 weeks and still not cured. I apologize this health issue is still on-going and further testing is to be scheduled. I don't understand why I could not be scheduled for the next available training session.

**From:** ROBERSON, DAX
**Sent:** Thursday, December 10, 2015 6:49 AM
**To:** CLUTTER, MICHAEL
**Subject:** Re: IGCIA - PRTP-1601 (CA)-Reporting Instructions - Periodic Refresher Training Program

This is more than a month out, Mike. You need to plan on attending.

**From:** CLUTTER, MICHAEL
**Sent:** Thursday, December 10, 2015 6:31 AM
**To:** ROBERSON, DAX
**Subject:** FW: IGCIA - PRTP-1601 (CA) Reporting Instructions - Periodic Refresher Training Program

Will you please schedule me for the next Kansas City session for this training course? I am still trying to address an on-going health issue which I will submit sick leave requests for 2 days next week for additional testing. Thanks.

**From:** registrar [mailto:registrar@cigie.gov]
**Sent:** Wednesday, December 09, 2015 2:35 PM
**To:** 'FRB (I) - Jon Ellwanger' (jon.w.ellwanger@frb.gov); Dillinger, Michael (OIG) (Michael.Dillinger@usdoj.gov); Angelette.Taylor@amtrakoig.gov; SANCHEZ, EILEEN; janice.merriweather@gsaig.gov; 'Peace Corp (I) - Jeff Reichert' (jreichert@peacecorps.gov); janice.merriweather@gsaig.gov; Berner, Marie
**Cc:** Tom Bonner; daniel.webb3@oig.dhs.gov; paul.torres@oig.dhs.gov; cecilia.v.braga@frb.gov; wayne.s.rosen@frb.gov; michael.a.ross@frb.gov; ryan.c.wet@frb.gov; leland.j.wulff@frb.gov; Scott Redington (scott.k.redington@frb.gov); gerald.l.maye@frb.gov; jim.kirdar@usdoj.gov; Dillinger, Michael (OIG) (Michael.Dillinger@usdoj.gov); jamie.wilkming@gsaig.gov; George.Dorsett@Amtrakoig.gov; Laven.Griffith@Amtrakoig.gov; CASAS, ANA; SCHANER, TROY; MOHATT, ANTHONY; SMITH, JOE; CLUTTER, MICHAEL; COFFEY, ANN; gregory.henderson@oig.usda.gov; ROMERO, STEVE; GUTIERREZ, RAUL; FULLERTON, KEVIN M; paul.walton@gsaig.gov; 'Peace Corps (I) - John Warren' (jwarren@peacecorps.gov); gmelo@peacecorps.gov; jpallotta@peacecorps.gov; dbonaro@peacecorps.gov; paul.walton@gsaig.gov; glen.guymon@gsaig.gov

19

23. The FMLA, FFLP and Agency Absence and Leave Policy IG-3630 allow a Federal employee to utilize accrued sick leave for care of the employee himself and to provide care for a family member as the result of physical or mental illness…medical examination…or treatment. It is alleged ASAC Roberson has retaliated for past use of FMLA/FFLP sick leave for care of an elderly family member, and has interfered with, restrained, denied the exercise of, or the attempt to exercise, any future use of FMLA, FFLP and Agency Policy authorized sick leave, for the care of the employee himself.

24. The Plaintiff requested, obtained prior Agency approval, and used 24 hours of paid sick leave  (runs concurrent with FMLA/FFLP time limitations) to provide care of family member (Mother and Step-Father 81 years old at that time) which occurred from 11/3/14 through 11/5/14.  This included travel time from Spring, Texas, to Joplin, Missouri, and return travel. The Plaintiff alleges that ASAC Roberson retaliated against the Plaintiff for having used prior approved sick leave/FMLA/FFLP leave during the Fall 2014 to address "family health issues" as a basis for his "bullying" and issuance of his written medical determination, assessment and threat that even with receipt of a doctor's note regarding possible future use of sick leave for the Plaintiff 's own personal and current health issue, that such a letter could be perceived as detrimental to the Plaintiff's physical performance as an 1811.  It is also alleged that ASAC/SAC Roberson does not harass, intimidate, discourage, "bully" or interfere with special agents who are less than 50 years of age in utilizing sick leave/FMLA/FFLP authorized leave while taking care of their younger children which it is common knowledge that ASAC/SAC Roberson has utilized such sick leave/FMLA/FFLP allowed leave in addressing his own family's medical needs, most notably his children's medical needs/issues.  It is further alleged ASAC Roberson retaliated against the Plaintiff for requesting a reasonable accommodation to address his own

personal health issue(s) by "bullying", retaliating, issuing the detrimental performance employment threat and discouraging Plaintiff's possible future use of sick leave.

25. It is further alleged the Agency, through the action(s) of ASAC Roberson, had and was interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right and provisions of the FFLP. This alleged interference violation occurred when ASAC Roberson made the determination and issued written email notice and threat that if the Plaintiff used or uses any sick leave to address or obtain necessary medical service(s) for a current and on-going health condition, that even with a note from a doctor to substantiate medical necessity, that the letter could be perceived as detrimental to the Plaintiff's physical performance as an 1811. This violation further substantiates ASAC Roberson's intention to create and foster a "constructive discharge" work environment and plan to "bully" and take an adverse action, including up to, immediate dismissal of Plaintiff's employment due to ASAC Roberson's own assessment and determination of Plaintiff's health and physical performance issue(s). This violation was committed by ASAC Roberson after having knowledge that the Plaintiff was scheduled for further medical testing on 12/15/15 and 12/17/15, and after having been advised of anticipated/expected follow-up physician care and obtainment of necessary medical services in the upcoming weeks. The Plaintiff further alleges that ASAC Roberson was not authorized nor designated as the Agency Medical Review Officer (MRO) who would normally be consulted when any determination or adverse action(s) would be taken based upon an employee's on-going health issue. The Plaintiff further alleges ASAC/SAC Roberson's issued threat and stipulation regarding any future use of sick leave by the Plaintiff resulted in a policy that was discriminatory against those older employees who had aging parent(s) and

21

themselves to take care of which the likelihood of utilizing such sick leave continually increases with the increase in age of the employee and or the employee's parent(s).

C. Alleged violations of the Privacy Act of 1974 and Agency Privacy Matters Policy IG-1421 regarding Plaintiff's use of sick leave – (Time Period:  Fall 2014 through Present regarding any further disparate treatment or threat(s) made for any future use of leave that SAC Roberson may utilize)

26. The main purpose of the Privacy Act of 1974 is to protect the privacy of individuals who are identified in information systems maintained by federal agencies, by regulating the (1) collection, (2) maintenance, (3) use, and (4) dissemination of that information by such agencies. A system of records is a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual.  Each agency that maintains such system of records is required to publish in the Federal Register upon establishment or revision, a notice of the existence and a description of the system.  Any use of a record should be compatible with the purpose for which it was collected.

27. It is alleged the Agency, through the action(s) of ASAC/SAC Roberson, committed violation(s) of the Privacy Act of 1974 and Agency Policy IG-1421 regarding the collection, maintenance, use and dissemination of the information referenced in ASAC Roberson's written email dated December 10, 2015, which enabled ASAC Roberson to further create and foster a continuing "constructive discharge" work environment by "bullying" and committing violations of the FMLA, FFLP and Agency Absence and Leave Policy IG-3630.

28. It is alleged the allowed collection of personal and medical information regarding the Plaintiff's purpose to provide care for a parent(s) for approved employee utilization of FMLA and/or FFLP sick leave to provide such care, was not collected for the purpose of allowing ASAC Roberson, whether in whole or in part, to "bully" and further make his assessment, determination and issued threat regarding the Plaintiff's "physical performance as an 1811".

22

29. It is alleged ASAC Roberson failed to "collect" firsthand from the Plaintiff any additional or necessary information utilized as the basis in ASAC Roberson's negative assessment and determination of the Plaintiff's "physical performance as an 1811", which included (1) any answers from Plaintiff regarding any "suspected", "perceived" or "purported" violations of requesting or using FMLA or FFLP leave, (2) any medical records pertaining to Plaintiff's current medical condition, prognosis or health status, or (3) any information regarding additional future medical tests and or future plan of care to be formulated based upon test results, prognosis and health status of Plaintiff. The Plaintiff has never been contacted by any *authorized* Agency representative, such as the Medical Review Officer, requesting medical records nor was the Plaintiff ever notified that the Plaintiff had committed, or was suspicioned of having committed, any FMLA, FFLP or Agency Sick Leave Policy IG-3630 violations or questionable wrong-doings prior to receipt of the written threat and "bullying" admonishment email issued by ASAC Roberson on December 10, 2015.

30. It is alleged, the Agency, through the actions of ASAC Roberson, "maintained" and "used" personal and health information, both on the Plaintiff and the Plaintiff's parent(s), in ASAC Roberson's written "bullying" and threat issuance email admonishment to make his assessment and determination to negatively question the Plaintiff's "physical performance as an 1811". Plaintiff is unaware of any employees less than 50 years of age who were "bullied" or threatened by ASAC/SAC Roberson in his utilization of information protected by the Privacy Act of 1974.

31. It is alleged, ASAC Roberson used the information to create and "disseminate" an Agency document, i.e. the written "bullying" and threat issuance email admonishment, which addressed and utilized Privacy Act and Agency Policy IG-1421 protected personal and medical

23

information of the Plaintiff and the Plaintiff's parent(s). This "bullying" email admonishment

created and disseminated by ASAC Roberson is now an electronic Agency record which depicts

ASAC Roberson's action of having questioned the Plaintiff's "physical performance as an

1811". This type of admonishment email record could further be used against the Plaintiff since

it states a supervisor's (ASAC Roberson) recorded concerns and or

findings/assessment/determination regarding the Plaintiff's "physical performance as an 1811"

which could apply to Agency Giglio policy and the Plaintiff's current and future maintenance of

a "Top Secret Security Clearance".

D. Alleged Disparate Treatment of Plaintiff in directing Plaintiff to "get out there and shoot" automatic weapons firearms courses with sustained "on the job" knee injury in contrast with the instruction issued from the Range Firearms Instructor for Plaintiff to not participate in the automatic firearms courses due to firearms range safety concerns and customary Range Safety Practices utilized by the Agency – (Time Period: September 14, 2016); *and*

E. Alleged Disparate Treatment of Plaintiff regarding "bullied" or discouraged use of seeking any relief provided by the Federal Employees Compensation Act (FECA) regarding an "on the job" sustained knee injury – (Time Period: September 14, 2016), *and*

F. Alleged violation(s) of the Privacy Act of 1974 were committed under the direction of SAC Roberson by ordering or having conducted a "secret" inquiry/investigation, unknown to Plaintiff prior to October 31, 2016, regarding Plaintiff's sustained "on-the-job" knee injury – (Time Period: Between September 14 and October 31, 2016).

32. The Plaintiff alleges the violations listed in Sections D., E. and F., above, in the

following paragraphs numbered 33 through 37.

33. On September 13, 2016, the Plaintiff injured his right knee while attending and

participating in Control Tactics (CT) training. The Plaintiff reported the injury to a CT instructor

which the Plaintiff continued the training at a lessor level of intensity. During the evening, the

Plaintiff's right knee had incurred additional swelling and increased pain intensity.

34. On September 14, 2016, the Plaintiff participated in Firearms training and

successfully completed two .40 caliber semi-auto handgun courses which the Plaintiff had

difficulty in assuming a kneeling from standing shooting stance.  Upon completion of these two courses, the Plaintiff notified a Firearms Instructor ("FI") and stated the Plaintiff may need additional time in order to participate in standing, kneeling and prone shooting positions utilizing the MP-5 and UMP-40 automatic weapons.  The Firearms Instructor stated it would be best for the Plaintiff not to participate in the upcoming automatic weapons courses due to the number of agents on the firing line and range safety concerns/issues.  The Plaintiff then attempted to "sit down" where two other agents were also not participating due to sustained injuries which SAC Roberson confronted the Plaintiff and asked what he was doing.  The Plaintiff explained that he had injured his knee the day prior and that it was still injured which a Firearms Instructor stated it would be best if the Plaintiff didn't shoot the automatic weapons courses. SAC Roberson appeared to be very disturbed and upset that the Plaintiff was not going to participate in the two automatic weapons courses which SAC Roberson then abruptly ordered the Plaintiff to "get out there and shoot".  Based upon the direct order and SAC Roberson's demeanor of being upset and mad, the Plaintiff told the Firearms Instructor he was ordered by SAC Roberson to shoot the courses regardless of the Plaintiff's injured knee and instructions received from the Firearms Instructor to not participate in the courses.  The Plaintiff then completed the two automatic courses, but experienced further difficulty in completing the courses and further aggravated the knee injury.  The Plaintiff returned to the area where several agents were assembled re-loading magazines for weapons, etc., which the Plaintiff was confronted by SAC Roberson and stated to the effect "I guess the Agency got its checkmark" referring to completion of the firearms courses, which SAC Roberson loudly responded in the presence of several other agents that those "checkmarks" is what the Plaintiff "gets paid for".  The Plaintiff did not want to further discuss this issue further in the presence of the other agents and did not believe this was the

appropriate venue to do so, which the Plaintiff stated they could further discuss the issue in the parking lot which was adjacent to and around the corner of the building where several agents were assembled, but other agents would still have visual view of the parking lot area. Once again, SAC Roberson appeared to be upset, mad and walked away from the Plaintiff, even given the fact the Plaintiff had followed his direct order and had completed the firearms courses with his reported knee injury.

35. Soon after the firearms training session was completed due to extremely hot weather conditions and a subsequent lunch break, the Plaintiff put ice on his further aggravated injured knee and continued to use ice throughout the day and evening. The Plaintiff has continued to suffer from some degree of pain in his right knee sustained from this injury, although, the injury has since considerably improved. The Plaintiff did not seek any medical attention such as that offered through the Federal Employees Compensation Act (FECA) for fear that SAC Roberson would most likely become further upset based upon his prior "bullying" demeanor and would further continue disparate treatment of the Plaintiff had the Plaintiff obtained medical attention. It was unknown by the Plaintiff at this time that this on-the-job injury incident would in fact result in further disparate treatment as being the basis for SAC Roberson directing that a negative "needs improvement" comment be listed on a critical element of the Plaintiff's FY 2016 Performance Appraisal.

36. Based upon the Plaintiff's own observation, he observed at least two other agents who did not participate in the firearms courses due to reported injuries and did not observe SAC Roberson issuing any direct order(s) to them to participate in any firearms courses. It is noted that a report was filed by a Firearms Instructor with Agency Headquarters which stated the Plaintiff had successfully completed all firearms courses and had also sustained an injury to his

26

right knee. The Plaintiff further alleges that direct orders such as SAC Roberson directing the Plaintiff to complete firearms training with a reported injury in conflict with Agency and the adopted Federal Law Enforcement Training Center (FLETC) firearms range safety policies contributes to potential firearms range safety incidents, such as an accidental discharge of a weapon incident that occurred during or about August 2017 in the Midwest Region which resulted in one or more agents seeking medical attention due to shrapnel and/or buckshot injuries.

37. The Plaintiff later learned from Plaintiff's direct supervisor, Assistant Special Agent-in-Charge Patrick Munday ("ASAC Munday"), during a October 31, 2016, telephonic discussion, that per SAC Roberson's direction, that ASAC Munday had contacted "a few people" and or "line officers" (firearms instructor), such as Damon Musick, who in fact verified that the Plaintiff had sustained a knee injury which one of the line officer(s) considered pulling the Plaintiff off the (shooting) line since he observed that the Plaintiff seemed to be "struggling". ASAC Munday further stated to the Plaintiff that he could understand the Plaintiff's frustration with the situation. The Plaintiff had no knowledge prior to this October 31, 2016, telephone discussion that any type of an *official* and "secret" investigation or inquiry had been undertaken per SAC Roberson's direction regarding the Plaintiff's reported "on-the-job" knee injury, which resulted in it being the basis for a negative "needs improvement" type comment to be listed on the Plaintiff's FY2016 Performance Appraisal.

G. --Alleged Disparate Treatment of Plaintiff in directing the rating official, ASAC Patrick Munday, to list a negative "Needs Improvement" comment on Plaintiff's FY2016 Performance Appraisal – Time Period October 31, 2016 through Present.

38. The Plaintiff alleges the violations listed in Section G., above, in the following paragraphs numbered 39 through 42.

39.     During the first part of October 2016, the Plaintiff made known to his direct supervisor, ASAC Patrick Munday, that the Plaintiff planned and intended to work at least one or more additional years instead of retiring on December 31, 2016, for personal reasons.  Prior to this time, the Plaintiff had no knowledge there were any issues or problems that needed improvement on any of the Plaintiff's critical performance elements.  During the later part of October 2016, the Plaintiff received via email his FY 2016 Performance Appraisal which contained a negative "Needs Improvement" comment on a critical performance element.  On October 31, 2016, the Plaintiff was first able to discuss with his direct supervisor, ASAC Patrick Munday, the negative comment that stated "However, improvement can be made with SA Clutter's commitment to supporting an atmosphere of teamwork and a culture of mutual cooperation with colleague, especially during mandatory training" listed on Critical Element 3 – Liaison To Enhance Investigations/OIG Effectiveness for the FY 2016 Performance Appraisal document.   During the telephonic conversation, ASAC Munday explained that SAC Roberson told him to the effect "we're going to take note of this on the eval." which this negative comment was about an "incident" between the Plaintiff and SAC Roberson which the Plaintiff had sustained an "on-the-job" knee injury during the Regional Conference training held during September 2016.  ASAC Munday stated to the Plaintiff that he was not even there (at the training), but SAC Roberson directed him to put the negative comment in there (referencing Plaintiff's FY 2016 Performance Appraisal).  ASAC Munday agreed with the Plaintiff that he was the "rating official" and SAC Roberson was the "reviewing official" even though SAC Roberson directed him to list the negative comment.  ASAC Munday also agreed with the Plaintiff that the "incident" that resulted in a negative comment being listed per SAC Roberson's direction should have been discussed with the Plaintiff prior to issuance of the Performance

28

Appraisal and that SAC Roberson should have confronted the Plaintiff with any issues that needed improvement in a critical performance element.

40. Upon completion of the October 31, 2016, telephonic conversation, the Plaintiff stated the negative comment was too vague and did not state enough specificity in order for the Plaintiff to meet SAC Roberson's "…improvement can be made…" expectation. Based upon the Plaintiff's claim of the negative comment being too vague, the Plaintiff asked ASAC Munday to contact SAC Roberson and either have SAC Roberson remove the comment or provide additional information to be listed on the FY 2016 Performance Appraisal document to provide greater specificity so the Plaintiff could know what or how to "improve" in order to meet SAC Roberson's "Needs Improvement" expectation. On November 1, 2016, ASAC Munday telephonically contacted the Plaintiff and stated SAC Roberson refused to remove the negative comment and that a written explanation stating specifically what the "incident" was about and what means the Plaintiff could do in order to meet the "needs improvement" expectation would be forthcoming to the Plaintiff, although ASAC Munday explained this forthcoming written "explanation" would not be part of the FY2016 performance appraisal. On November 3, 2016, the Plaintiff signed and returned the FY 2016 Performance Appraisal but listed the following statement "Employee does not agree with negative comment contained in last sentence of Element 3 attachment". No such written explanation or additional information was provided to the Plaintiff nor was any information regarding a plan or action(s) the Plaintiff could undertake to improve provided or addressed which might have allowed the Plaintiff to meet SAC Roberson's stated "Needs Improvement" expectation.

41. At no time prior to the issuance of the FY 2016 Performance Appraisal, did the Plaintiff realize his reported "on-the-job" right knee injury would be utilized by SAC Roberson

29

as the basis to list a negative comment on a critical performance element. In fact, management officials usually ask an injured employee if they want to seek medical attention when an injury is sustained on-the-job, especially during any semi-automatic or automatic firearms training, rather than use an injury incident as a basis for a "needs improvement" comment on a performance measure.

42. The Plaintiff further alleges that SAC Roberson committed disparate treatment of the Plaintiff in that SAC Roberson acted as both the "rating" and "reviewing" official on Plaintiff's FY 2016 Performance Appraisal which normally the Special Agent-in-Charge official does not act in the capacity as the "rating" official on any other Agency employees, especially given the fact SAC Roberson signed the Performance Appraisal as the Reviewing Official.

H. –Questioned special "grouping" and addressing of "eligible" and "mandatory" retirement dates for each Special Agent during September 12, 2016, training session, subsequent email containing special "grouping", and Plaintiff's notification of intent to work one or more years – (Time Period: September 12, 2016, through Present)

43. The Plaintiff alleges the violations listed in Section H., above, in the following paragraphs numbered 44 through 48.

44. On September 12, 2016, during a Regional Training Conference, SAC Roberson discussed in detail and presented a power-point type display chart that identified the employees in a "special grouping" list who were listed with corresponding eligible and or mandatory retirement dates for the older employees. Some of the older agents listed on the power-point type chart did not appreciate being specifically listed as part of an "older or retirement eligible group", or the fact that due to mandatory retirement age at 57 years old, that any of the class participants could easily figure out the depicted employee's age.

45. During SAC Roberson's presentation, it was specifically discussed which employees would be retiring by the end of the calendar year. SAC Roberson specifically mentioned the

Plaintiff's name and stated that the Plaintiff's position in the Shenandoah, Texas office would not be backfilled due to greater agent position needs in some of the other regional offices and the Shenandoah office being "over-staffed".  On March 23, 2017, contrary to SAC Roberson's statements regarding the Plaintiff's position not being backfilled in the Shenandoah, Texas, office, SAC Roberson sent an email to the region special agents that stated another special agent would be returning to the region from Agency Headquarters and would be assigned to the Shenandoah, Texas, office.  This special agent, identified herein as "Special Agent DA", was a younger white male, under the age of 40 years who reported to the Shenandoah, Texas office during or about May 2017.

46.  In addition to the September 2016, Regional Training Conference, SAC Roberson also sent an email dated September 27, 2016, to the Southwest Region agents that listed the "eligible" and "mandatory" retirement dates for each agent.  Once again, it was very simple to determine the age and birth date of each employee listed simply by deducting 57 years from the "Mandatory" retirement date, such as "Agent John Doe" having a mandatory retirement date of February 1, 2022, would mean "Agent John Doe" was born on February 1, 1965, etc.  This repeated type of personal information and "grouping" of the older agents as "eligible" or "mandatory" to retire, at a minimum, appears questionable in that such grouping and presentation of this information is appropriate to share with all of the Southwest Region agents addressing the exact age of each "retirement eligible" agent and given the many negative stigmas and stereotypes frequently associated with "older employees".

47.  During the first part of October 2016, the Plaintiff made known to his direct supervisor, ASAC Patrick Munday, that the Plaintiff planned and intended to work at least one or more additional years instead of retiring on December 31, 2016, for personal reasons.  Prior to

this time and up until October 31, 2016, the Plaintiff had no knowledge there were any issues or problems that needed improvement on any of the Plaintiff's critical performance appraisal elements.

48. The Plaintiff is also aware of "incidents" of where other "retirement eligible" agents were treated in a manner that appeared to be disparate by SAC Roberson which evidence of these "incidents" will or may be offered to further substantiate SAC Roberson's singling out and/or different treatment of agents in excess of 50 years of age.

I. Three examples of alleged continued discrimination and disparate acts committed by ASAC/SAC Roberson and the Agency.

49. The Plaintiff alleges the violations listed in Section I., above, in the following paragraphs numbered 50 through 55.

50. On or about January 23, 2017, the Plaintiff provided written notification to the Agency's Equal Employment Opportunity Specialist that outlined three examples/incidents of the continued and on-going discriminatory and disparate acts being committed against the Plaintiff since and *after* the informal EEO complaint was filed with the Agency.

51. The first example was the Agency's refusal to rescind SAC Dax Roberson's direct order that censored and prohibited the Plaintiff from making *required* Giglio and Brady material disclosures to the prosecutor(s) on a criminal case (Te-2748-1425), of which the defendant was still under criminal indictment, even after the Agency's Office of Counsel and Human Resources Management Division were formally notified that the Plaintiff had been censored and forbidden by SAC Dax Roberson to follow Agency Policy IG-1518

52. The second reported example occurred on January 17, 2017, as SAC Dax Roberson continued to harass the Plaintiff by utilizing the Plaintiff's familial relationship with his spouse, Special Agent Laurie C. Gray, who also was over 50 years of age. After the informal EEO

32

complaint was filed, SAC Dax Roberson had been overly critical about the most insignificant matters. On January 17, 2017, SAC Dax Roberson sent an email accusing and admonishing both the Plaintiff and his spouse for using the Temple OIG Office's main line for "personal matters" regarding the purchase of a 2014 vehicle from a GMC dealership, when in fact, the Plaintiff, and not his spouse, listed this phone number for employment verification purposes in order to obtain a loan, which this is a common and acceptable practice utilized by most other Agency employees.

53. The third reported example was the Agency, through the actions of SAC Roberson, of having failed to provide the requested, and ASAC Patrick Munday's stated and agreed upon follow-up guidance supporting the negative "Needs Improvement" comment listed on Plaintiff's FY2016 performance appraisal, detailing how the Plaintiff could "improve." The past actions/violations and continued actions/violations committed by SAC Roberson against the Plaintiff, and presumably the Plaintiff's spouse, further contributed to the "constructive discharge" environment in order to force the Plaintiff to resign and/or retire from the Agency.

54. The Plaintiff alleges that as a result of SAC Roberson's refusal to provide specificity regarding the negative "Needs Improvement" comment listed on the Plaintiff's FY 2016 performance appraisal and refusal to provide feedback or information regarding how the Plaintiff could improve or what SAC Roberson's performance expectations are for the Plaintiff, that the Plaintiff had been placed at a definite disadvantage in improving or achieving SAC Roberson's expectations in his capacity as both a rating official and reviewing official. The Plaintiff is not aware of any other special agents less than 50 years of age who have not been provided sufficient specificity and feedback on their annual performance appraisals.

55. The Plaintiff further alleges that it is common knowledge and practice that it is and would be much more difficult for the Plaintiff to seek employment as a special agent with another

33

federal law enforcement agency given the Plaintiff's age of 53 with mandatory retirement at age 57 years old and that a "Needs Improvement" comment is listed on a critical element on the Plaintiff's last FY 2016 performance appraisal.

J. Pattern of Harassment Regarding Plaintiff's Opening and Assignment of Criminal Cases

56. The Plaintiff alleges the violations listed in Section J., above, in the following paragraphs numbered 57 through 59.

57. Since March 6, 2017, the Plaintiff noted that SAC Roberson had placed greater scrutiny on the Plaintiff's assigned case work load and pending criminal case complaints. The first noted example was the Plaintiff having obtained approval from his direct supervisor, ASAC Patrick Munday, to investigate a government employee embezzlement type complaint, which if the complaint allegation(s) were substantiated, the Plaintiff would request a case opening and assignment. Once the Plaintiff determined that the employee embezzlement allegations appeared to be substantiated after the review and scheduling of numerous financial and employment records, the Plaintiff requested ASAC Munday to open and assign the case to the Plaintiff. Subsequent to the Plaintiff having made the case opening and assignment request, ASAC Munday notified the Plaintiff that SAC Dax Roberson refused to open the criminal case and that the Plaintiff was expected to refer the pending criminal case to local or other authorities who may complete the criminal investigation. The case complainant source later contacted SAC Roberson regarding SAC Roberson's decision to not open and assign the case, which the case complaint source told the Plaintiff that SAC Roberson denied he had refused to open and assign the case to the Plaintiff to investigate and that ASAC Munday was the manager responsible for making such case opening and assignment decisions. The Plaintiff soon thereafter contacted ASAC Munday and relayed the information received from the case complaint source. ASAC Munday subsequently contacted the

Plaintiff and stated the case would be opened and assigned. ASAC Munday responded in an email he did not know what changed SAC Roberson's mind to open and assign the case to the Plaintiff.

58. The Plaintiff then noted extraordinary delay periods existed between the time when the Plaintiff requested case(s) to be opened and assigned and the actual time when the case(s) were opened and assigned to the Plaintiff. One such continuing example involved a criminal case which was requested to be opened and assigned on June 20, 2017, which as of this date, the opening and assignment request has not been acknowledged, addressed nor opened and assigned.

59. The Plaintiff further alleges that although ASAC Munday is designated as the Plaintiff's direct supervisor, that SAC Dax Roberson continues to provide disparate treatment of the Plaintiff in over-riding the Plaintiff's direct supervisor, ASAC Munday, in addressing and opening and assigning criminal cases in a reasonable and timely manner which results in lessor documented work performance accomplishment(s).

60. The Plaintiff requests that this Honorable Court award the Plaintiff money damages, front pay, back pay, unpaid overtime compensation (Law Enforcement Availability Pay), liquidated damages, compensatory damages, punitive damages, mental stress, emotional stress, actual damages, loss of professional opportunities, attorney fees and costs.

COUNT II

FAMILY AND MEDICAL LEAVE ACT OF 1993 ("FMLA"), 29 U.S.C. § 2611 et seq.

61. Plaintiff files this Family and Medical Leave Act of 1993 ("FMLA") lawsuit because the agency has willfully refused to abide by the FMLA, 29 U.S.C. Section 2611 et seq. and 2615(a)(1), regarding retaliation for past use of FMLA/FFLP leave which said retaliation was further utilized in the interference with a request for a reasonable accommodation for the Plaintiff that would not create additional expenses for the Agency in order for the Plaintiff to address an

35

on-going health issue and interference with any Plaintiff's attempted future exercise of FMLA rights.

62. Plaintiff alleges the Agency knew and or showed reckless disregard for its conduct prohibited by the FMLA when ASAC/SAC Dax Roberson issued a decision contained in his email response dated December 10, 2015, based upon Plaintiff's past use of 24 hours of FMLA/FFLP leave to provide direct care for a family member during 11/3/14 through 11/5/14 and Plaintiff's pending notification that Plaintiff intended to request future sick leave to address an on-going personal health issue, which ASAC/SAC Roberson stated "If you present to me a doctor's note indicating you cannot travel and sit in a class, then you will be excused. Such a letter though could be perceived as detrimental to your physical performance as an 1811 though."

63. Plaintiff re-alleges the information and facts stated in paragraphs numbered 21 through 25 of this complaint which substantiates the alleged violation(s) of the FMLA.

64. Plaintiff further alleges that the OIG-I willfully and knowingly created and fostered a discriminatory , harassing and hostile work environment as a result of ASAC/SAC Dax Roberson's managerial direction and conduct where (1) the conduct becomes a condition of continued employment or unreasonable interference with Plaintiff's work performance, and/or (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, which such type of working environment is further cited and prohibited by Agency Policy IG-3780 by refusing to abide by the FMLA. The Plaintiff further alleges that ASAC/SAC Roberson's knowing and willful managerial direction and conduct further resulted in a "constructive discharge" work environment in attempting to have the Plaintiff resign or retire due to intolerable work conditions.

36

65. The Plaintiff requests that this Honorable Court award the Plaintiff money damages, attorney fees and costs, back pay, front pay, liquidated damages, and loss of professional opportunities, for the following adverse determinations:

(1) the retaliation for past use and interference with future use of FMLA/FFPL leave that resulted in an Agency decision that such pending future use could be detrimental to the Plaintiff's physical performance as an 1811 (GS-1811 special agent);

(2) the creation and implementation of a "constructive discharge" work environment for the Plaintiff.

66. OTHER DAMAGES: The Agency willfully violated 29 U.S.C. Section 2615(a)(1) when it knew and or showed reckless disregard for whether its conduct was prohibited by the FMLA that proximately caused an adverse effect on the Plaintiff. Plaintiff requests money damages, attorney fees and costs, back pay, front pay, liquidated damages, and loss of professional opportunities.

COUNT III

PRIVACY ACT OF 1974, 5 U.S.C. § 552a et seq.

67. Plaintiff files this Privacy Act of 1974 lawsuit because the agency has refused to abide by the Privacy Act of 1974, 5 U.S.C. Section 552a(g), et sec, regarding: amendment under (g)(1)(A), access under (g)(1)(B), accuracy under (g)(1)(C) and other damages under (g)(1)(D).

68. Plaintiff alleges that the OIG maintained inaccurate, irrelevant, false and incomplete record(s) on the Plaintiff in their system of records. Plaintiff also alleges that the OIG failed to properly "maintain" record(s) that includes by definition the maintenance, collection, use or dissemination of record(s).

69. Plaintiff re-alleges the information and facts stated in paragraphs numbered 26 through 31 of this complaint which substantiates the alleged violation(s) of the Privacy Act of 1974.

70. The first record(s) that Plaintiff alleges violates the Privacy Act of 1974 is/are the FMLA/FFLP leave request record(s), along with any additional record(s) that were created, specifically including record(s) maintained in an Agency acknowledged "supervisor's file", which documented the medical necessity and Agency determination for use of such requested leave as stated by ASAC/SAC Roberson as being "due to family health issues", to wit, for care of Plaintiff's step-father and aiding mother in step-father's care.

71. The second record(s) that Plaintiff alleges violates the Privacy Act of 1974 is/are the record(s), specifically including record(s) maintained in an Agency acknowledged "supervisor's file", utilized by ASAC/SAC Dax Roberson in determining the medical necessity of the Plaintiff's reported/disclosed health problem/issue as further documented in the email record(s) ASAC/SAC Roberson created on December 10, 2015, which ASAC/SAC Roberson determined and stated that "If you present to me a doctor's note indicating you cannot travel and sit in a class, then you will be excused. Such a letter though could be perceived as detrimental to your physical performance as an 1811 though." The Plaintiff has requested through a Privacy Act request these records utilized by ASAC/SAC Roberson in his determination that the Plaintiff's performance as a special agent could be perceived as detrimental even with a doctor's note. The Agency has failed to provide or even acknowledge existence of the record(s) or not.

72. Plaintiff alleges that the OIG-I willfully and knowingly created and fostered a discriminatory , harassing and hostile work environment as a result of ASAC/SAC Dax Roberson's managerial direction and conduct where (1) the conduct becomes a condition of continued employment or unreasonable interference with Plaintiff's work performance, and/or (2) the

conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, which such type of working environment is further cited and prohibited by Agency Policy IG-3780 by refusing to abide by the Privacy Act of 1974. The Plaintiff further alleges that ASAC/SAC Roberson's knowing and willful violation(s) of the Privacy Act of 1974 were utilized in his managerial direction and conduct which further resulted in a "constructive discharge" work environment in attempting to have the Plaintiff resign or retire due to intolerable work conditions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff alleges the following violations and damages:

1. AMENDMENT: The Agency denied the Plaintiff the right to amend or attach a disagreement or otherwise remove the inaccurate and false records from the Agency's system of records in violation of 5 U.S.C. Section 552a(g)1(A). Plaintiff requests this Honorable Court to order (injunctive relief) the defendant agency to follow the law and amend the record(s) regarding the Plaintiff's misuse or other issue(s) unknown to Plaintiff, that substantiated ASAC/SAC Roberson's decision that future use of sick leave to address an on-going personal health issue could result as detrimental to the Plaintiff's physical performance as a special agent and by doing so, absolve and exonerate the Plaintiff of any alleged wrongdoings or appraised work performance issue(s) that appear in the agencies system of records, plus attorney fees and costs.

2. ACCESS: The Agency denied Plaintiff the right to access his record(s) in violation of 5 U.S.C. Section 552a(g)1(B). The Plaintiff requests that this Honorable Court order the defendants (injunctive relief) to turn over the records as heretofore described, plus attorney fees and costs.

3.    MAINTENANCE:  The Agency violated 5 U.S.C. Section 552a(g)(c), (g)(4) by, willfully and intentionally,

(1)  not maintaining in its records of the Plaintiff only such information as was relevant and necessary to accomplish the purpose of the Agency;

(2)  not collecting information from the Plaintiff;

(3)  not maintaining in its records of the Plaintiff used by this Agency with such accuracy, relevance, timeliness and completeness as was reasonably necessary to assure fairness to the Plaintiff;

(4) by maintaining false, erroneous or irrelevant records, such as those record(s) demonstrating managerial decisions with negative findings based upon the Plaintiff's past use of FMLA/FFLP sick leave and on-going personal health issue(s).

The Plaintiff requests this Honorable Court award the Plaintiff money damages, attorney fees and costs, mental distress, emotional distress, actual damages, loss of professional opportunities, for the following adverse determinations:

(1)  the creation and implementation of a "constructive discharge" work environment for the Plaintiff;

(2)  Decision-maker decisions about the performance of the Plaintiff based upon past use of FMLA/FFLP leave to care for a family member and any current and future use of sick leave to address a personal health issue even with a doctor's note could result as detrimental to the Plaintiff's physical performance as a special agent;

(3)   failure to promote and lost promotional opportunities.

4. OTHER DAMAGES: The Agency violated 5 U.S.C. Section 552a(g)(D), (g)(4) for willfully and intentionally failing to comply with the provisions of Section 552a(b) that proximately caused an adverse effect on the Plaintiff. Plaintiff requests money damages, attorney fees and costs.

COUNT IV

PRIVACY ACT OF 1974, 5 U.S.C. § 552a et seq.

73. Plaintiff files this Privacy Act of 1974 lawsuit because the agency has refused to abide by the Privacy Act of 1974, 5 U.S.C. Section 552a(g), et sec, regarding: amendment under (g)(1)(A), access under (g)(1)(B), accuracy under (g)(1)(c) and other damages under (g)(1)(D).

74. Plaintiff alleges that the OIG maintained inaccurate, irrelevant, false and incomplete record(s) on the Plaintiff in their system of records. Plaintiff also alleges that the OIG failed to properly "maintain" record(s) that includes by definition the maintenance, collection, use or dissemination of record(s).

75. Plaintiff re-alleges the information and facts stated in paragraphs numbered 32 through 37 of this complaint which substantiates the alleged violation(s) of the Privacy Act of 1974.

76. Plaintiff alleges that the OIG-I willfully and knowingly created and fostered a discriminatory, harassing and hostile work environment as a result of ASAC/SAC Dax Roberson's managerial direction and conduct where (1) the conduct becomes a condition of continued employment or unreasonable interference with Plaintiff's work performance, and/or (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, which such type of working environment is further cited and prohibited by Agency Policy IG-3780 by refusing to abide by the Privacy Act of 1974. The Plaintiff further alleges that ASAC/SAC Roberson's knowing and willful violation(s) of the Privacy Act of 1974 were utilized in his managerial direction and conduct which further resulted

41

in a "constructive discharge" work environment in attempting to have the Plaintiff resign or retire due to intolerable work conditions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff alleges the following violations and damages:

1. AMENDMENT: The Agency denied the Plaintiff the right to amend or attach a disagreement or otherwise remove the inaccurate and false records from the Agency's system of records in violation of 5 U.S.C. Section 552a(g)1(A). Plaintiff requests this Honorable Court to order (injunctive relief) the defendant agency to follow the law and amend the record(s) regarding the secret inquiry/investigation regarding Plaintiff's sustained knee injury during training and by doing so, absolve and exonerate the Plaintiff of any alleged wrongdoings or appraised work performance issue(s) that appear in the agencies system of records, plus attorney fees and costs.

2. ACCESS: The Agency denied Plaintiff the right to access his record(s) in violation of 5 U.S.C. Section 552a(g)1(B). The Plaintiff requests that this Honorable Court order the defendants (injunctive relief) to turn over the records as heretofore described, plus attorney fees and costs.

3. MAINTENANCE: The Agency violated 5 U.S.C. Section 552a(g)(c), (g)(4) by, willfully and intentionally,

(1) not maintaining in its records of the Plaintiff only such information as was relevant and necessary to accomplish the purpose of the Agency;

(2) not collecting information from the Plaintiff;

(3) not maintaining in its records of the Plaintiff used by this Agency with such accuracy, relevance, timeliness and completeness as was reasonably necessary to assure fairness to the Plaintiff;

(4) by maintaining false, erroneous or irrelevant records, such as those record(s) demonstrating managerial decisions with negative findings based upon the Plaintiff's familial relationship (marriage) guaranteed by the first amendment or the outcome of the "secret" investigation regarding Plaintiff's sustained on-the-job knee injury which resulted in the use for a negative performance element assessment;

The Plaintiff requests this Honorable Court award the Plaintiff money damages, attorney fees and costs, mental distress, emotional distress, actual damages, loss of professional opportunities, familial loss, for the following adverse determinations:

(1) the creation and implementation of a "constructive discharge" work environment for the Plaintiff;

(2) Decision-maker decisions about the performance of the Plaintiff that he needed improvement in a critical performance element based on the inaccurate records as heretofore described.

(3) failure to promote and lost career opportunities with other federal law enforcement agencies due to critical performance element assessment.

4. OTHER DAMAGES: The Agency violated 5 U.S.C. Section 552a(g)(D), (g)(4) for willfully and intentionally failing to comply with the provisions of Section 552a(b) that proximately caused an adverse effect on the Plaintiff. Plaintiff requests money damages, attorney fees and costs.

COUNT V

PRIVACY ACT OF 1974, 5 U.S.C. § 552a et seq.

77. Plaintiff files this Privacy Act of 1974 lawsuit because the agency has refused to abide by the Privacy Act of 1974, 5 U.S.C. Section 552a(g), et sec, regarding: amendment under (g)(1)(A), access under (g)(1)(B), accuracy under (g)(1)(c) and other damages under (g)(1)(D).

78. Plaintiff alleges that the OIG maintained inaccurate, irrelevant, false and incomplete record(s) on the Plaintiff in their system of records. Plaintiff also alleges that the OIG failed to properly "maintain" record(s) that includes by definition the maintenance, collection, use or dissemination of record(s).

79. Plaintiff alleges that the OIG-I willfully and knowingly created and fostered a discriminatory , harassing and hostile work environment as a result of ASAC/SAC Dax Roberson's managerial direction and conduct where (1) the conduct becomes a condition of continued employment or unreasonable interference with Plaintiff's work performance, and/or (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, which such type of working environment is further cited and prohibited by Agency Policy IG-3780 by refusing to abide by the Privacy Act of 1974. The Plaintiff further alleges that ASAC/SAC Roberson's knowing and willful violation(s) of the Privacy Act of 1974 were utilized in his managerial direction and conduct which further resulted in a "constructive discharge" work environment in attempting to have the Plaintiff resign or retire due to intolerable work conditions.

80. Plaintiff filed separate Privacy Act and Freedom of Information Act (FOIA) requests dated December 9, 2016, for information related to many issues contained in this lawsuit, specifically including documentation used to support SAC Roberson's negative comment listed on a critical element of the Plaintiff's FY2016 performance appraisal, a "secret" inquiry conducted by the Agency regarding Plaintiff's injury on the firearms range, information maintained in the "supervisor's file" as referenced by the Agency to be in existence, any "drop files", any Giglio information or findings on Special Agent "RV" and SAC Roberson, and other documentation related to the issues in this lawsuit.

81. Plaintiff made several inquiries regarding the processing status of his Privacy Act and FOIA requests which the Agency provided self-imposed completion deadlines of the following: March 20, 2017; May 19, 2017; June 28, 2017; partial response by August 31, 2017 with completion date of October 9, 2017; and October 30, 2017. As of this date, no records or information pertaining to the requested records in the December 9, 2016, Privacy Act and or FOIA requests have been produced by the Agency.

---

Privacy Act and Freedom of Information Act individual requests made by Plaintiff dated December 9, 2016

On or about December 9, 2016, Plaintiff made individual written requests pursuant to the Privacy Act of 1974 and the Freedom of Information Act (FOIA) in accordance with the Agency policy for the following records:

1. Any and all records pertaining to Giglio and or negative employment actions, findings or disclosures maintained on Dax Roberson, Special Agent-in-Charge and formerly Assistant Special Agent-in-Charge, Office of Inspector General-Investigations, Temple, TX.
2. Any and all records pertaining to Giglio and or negative employment actions, findings or disclosures maintained on former Special Agent "RV" ("RV" notation substituted for special agent's actual name), Office of Inspector General-Investigations, Shenandoah, TX.
3. Any and all records, specifically including email communications, regarding communication(s) between Special Agent-in-Charge Dax Roberson and Special Agent Michael D. Clutter regarding instructions and or admonishments directed at Special Agent Clutter for desiring to make disclosure(s) in accordance with Agency Policy IG-1518, Disclosure of Potential Impeachment Information and Agency adoption of U.S. Department of Justice Giglio Policy. This request specifically includes all email communication(s) from about the Fall 2012 through the present, including an email dated March 27, 2013.
4. Any and all records, specifically including email communications, regarding communication(s) between Special Agent-in-Charge Dax Roberson and any other Agency management official(s), including former Special Agent-in-Charge Mary Lewis, Temple, TX, regarding Dax Roberson's instructions and or admonishments directed at Special Agent Clutter for desiring to make disclosure(s) in accordance with Agency Policy IG-1518, Disclosure of Potential Impeachment Information and Agency adoption of U.S. Department of Justice Giglio Policy. This request specifically includes all email communication(s) from about the Fall 2012 through the present, including March 27, 2013.
5. Any and all records including Agency Policy, Directive or other Memoranda, which may have authorized Dax Roberson to issue any direction(s) contrary to or in conflict with Agency Policy IG-1518, Disclosure of Potential Impeachment Information and Agency adoption of U.S. Department of Justice Giglio Policy, and or to admonish any Agency employee, specifically including Special Agent Michael D. Clutter, in attempting to follow and exercise requirements as stated in such policy.

45

6. Any and all records including Agency Policy, Directive or other Memoranda, which may have authorized Dax Roberson to make any decisions or issue any direction(s) contrary to or in conflict with Agency Policies on discrimination, harassment or hostile work environment based upon age in accordance with Title VII of the Civil Rights Act of 1964 or the Age Discrimination in Employment Act (ADEA).

7. Any and all records including Agency Policy, Directive or Memoranda, which may have authorized Dax Roberson to act in the capacity as both the "Rating Official" and "Reviewing Official" in issuing performance and rating decisions on any Agency employee's performance appraisal.

8. Any and all records, specifically including any reports and email communications or information maintained in any "drop" or "supervisor working" type files or official reports, between Dax Roberson and Patrick Munday, Assistant Special Agent-in-Charge, Jackson, MS, and or any other Agency management or Headquarters official(s), regarding any negative findings/determinations related to a "needs improvement " type comment recorded on Special Agent Michael D. Clutter's FY2016 performance evaluation.

9. Any and all records, specifically including any reports and email communications or information maintained in any "drop" or "supervisor working" type files, regarding an investigation, inquiry and or "secret" type of inquiry/questioning event, that was directed and or conducted by Dax Roberson and Patrick Munday regarding a "firearms training incident" that occurred on September 14, 2016. This "firearms training incident" resulted in Dax Roberson requiring Special Agent Michael D. Clutter to continue participating with a reported knee injury in firearms qualification courses contrary to instruction provided by the Firearms Instructor due to agent and firearms range safety concerns. This request specifically includes notes, memorandum of interviews, memorandum of conversation, or other memoranda regarding contacts made by Patrick Munday and Firearms Instructors, in addition to possibly other Agency employee(s), regarding this "firearms training incident".

10. Any and all records regarding the September 14, 2014, reported knee injury made by Special Agent Clutter to a Firearms Instructor, specifically including any Use of Force Training Update and Review reports filed with OIG-I Headquarters around or about October 11, 2016.

11. Any and all records including Agency Policy, Directive or Memoranda, which may have authorized Dax Roberson to issue any direction(s) contrary to or in conflict with Agency Policy IG-8472, Use of Force, regarding Dax Roberson's authority negating or "trumping" the authority of the FI (Firearms Instructor) having the final authority in determining whether a Special Agent may continue to participate in a training or qualification session or the FI's responsibility for firearms range safety in conformity with Federal Law Enforcement Training Center (FLETC) standards.

12. Any and all records including Agency Policy, Directive or Memoranda, which may have authorized Dax Roberson to issue any direction(s), admonishments or threats contrary to or in conflict with the Agency Policy IG-3630, Absence and Leave Policy, Family and Medical Leave Act (FMLA) and the U.S. OPM Family Friendly Leave Policies, regarding Dax Roberson's authority to (1) determine the medical necessity of the requesting employee, (2) admonish requesting employee for any past FMLA or sick leave use for care of a family member, and (3) to determine that even with a "doctor's note", that the requesting employee may be excused but that such a "doctor's note" could be perceived as detrimental to the requesting employee's performance as an 1811 (Special Agent) ), as referenced in an email dated December 10, 2015..

13. Any and all records including emails pertaining to any medical findings made by the Agency, SAC Dax Roberson, or the Agency Medical Review Officer (MRO) regarding Special Agent Michael D. Clutter's "performance as an 1811" being of concern and questioned by the Agency through the action(s) of Dax Roberson, or the basis for Dax Roberson to assess the medical necessity of Special Agent Clutter in requesting sick leave or the basis of past use of sick leave having an effect on future requested sick leave, etc.

46

14. Any and all records, including email communications, between Dax Roberson and any other Agency official(s) or employee(s) regarding decisions made by Dax Roberson that formed the basis of his action(s) as listed in Item 12 above.

15. Any and all email communications, specifically including email communications dated December 10, 2015, between SAC Dax Roberson and Special Agent Michael D. Clutter regarding Special Agent Clutter's request to be rescheduled for training at a later date and the statements made by SAC Roberson regarding his 1) determination of the medical necessity of Special Agent Michael D. Clutter, (2) admonishment of Michael D. Clutter for past FMLA or sick leave use for care of a family member, and (3) his determination that even with a "doctor's note", that Special Agent Clutter may be excused but that such a "doctor's note" could be perceived as detrimental to Special Agent Clutter's performance as an 1811.

16. Any and all records, including email communications, regarding any "questioned" or "determined" abuse or misuse of sick leave committed by Special Agent Michael D. Clutter, by any Agency official(s), specifically including SAC Roberson.

17. Any and all records pertaining to any determination(s) made by any Agency official(s), specifically including SAC Roberson and or the Agency MRO, that Special Agency Clutter's performance as an 1811 (Special Agent) was problematic or that any future use of sick leave would be viewed as problematic, or that any rescheduling of training based upon any current health issue being addressed would be viewed as problematic.

18. Any and all emails with any attachments, charts, graphs, etc., that depict a "grouping" of the older age Special Agents employed in the Southwest Regions which has been maintained and or utilized by SAC Roberson, specifically including a PowerPoint presentation chart exhibited by SAC Roberson during a September 12, 2016, training session and an email dated September 27, 2016.

19. Any and all records pertaining to any past, present and or pending/on-going employment investigation(s) or inquiries being conducted on Special Agent Clutter based upon any alleged violation(s) of any rule, regulation, law or Agency Policy.

20. Any and all records pertaining to any past, present and or pending/ongoing negative employment investigation(s) or inquiries being conducted on Special Agent Clutter by SAC Roberson or by any Agency employee under the direction of SAC Roberson, to specifically include ASAC Munday, in a known or clandestine "secret" manner, along with any records or memoranda maintained, stored or "hidden" in any "drop" or "secret" files maintained by any Agency employees.

21. Any and all records pertaining to any past, present, pending, future or contemplated negative employment action(s) to be taken or implemented against Special Agent Clutter by any Agency official(s), SAC Roberson or any Agency employee(s) under the direction of SAC Roberson, to specifically include ASAC Munday.

22. Any and all records, including "drop" or "supervisor working" type files, pertaining to any past, present, pending, future or contemplated negative employment action(s) to be taken or implemented against Special Agent Clutter by any Agency official(s), SAC Roberson or any Agency employee(s) under the direction of SAC Roberson, to specifically include ASAC Munday.

23. Any and all records, including required Agency disclosure(s), pertaining to number of EEOC Complaints and Whistleblower Complaints filed against the USDA, Office of Inspector General during past 7 years.

24. Any and all records pertaining to action(s) taken against USDA, Office of Inspector, employees regarding Giglio and or Brady policy violation(s) during past 7 years.

82. WHEREFORE, PREMISES CONSIDERED, Plaintiff alleges the following violations

and damages:

47

1. AMENDMENT: The Agency denied the Plaintiff the right to amend or attach a disagreement or otherwise remove the inaccurate and false records from the Agency's system of records in violation of 5 U.S.C. Section 552a(g)1(A). Plaintiff requests this Honorable Court to order (injunctive relief) the defendant agency to follow the law and amend the record(s) regarding the records contained in the December 9, 2017, Privacy Act and FOIA requests and by doing so, absolve and exonerate the Plaintiff of any alleged wrongdoings or appraised work performance issue(s) that appear in the agencies system of records, plus attorney fees and costs.

2. ACCESS: The Agency denied Plaintiff the right to access his record(s) in violation of 5 U.S.C. Section 552a(g)1(B). The Plaintiff requests that this Honorable Court order the defendants (injunctive relief) to turn over the records as heretofore described, plus attorney fees and costs.

3. MAINTENANCE: The Agency violated 5 U.S.C. Section 552a(g)(c), (g)(4) by, willfully and intentionally,

(1) not maintaining in its records of the Plaintiff only such information as was relevant and necessary to accomplish the purpose of the Agency;

(2) not collecting information from the Plaintiff;

(3) not maintaining in its records of the Plaintiff used by this Agency with such accuracy, relevance, timeliness and completeness as was reasonably necessary to assure fairness to the Plaintiff;

(4) by maintaining false, erroneous or irrelevant records, regarding the records contained in the December 9, 2017, Privacy Act and FOIA requests;

The Plaintiff requests this Honorable Court award the Plaintiff money damages, attorney fees and costs, mental distress, emotional distress, actual damages, loss of professional opportunities, familial loss, for the following adverse determinations:

(1)  the creation and implementation of a "constructive discharge" work environment for the Plaintiff;

(2)  decision-maker decisions about the performance of the Plaintiff that he needed improvement in a critical performance element based on the inaccurate records as previously described.

(3)  failure to promote and lost career opportunities with other federal law enforcement agencies due to critical performance element assessment.

4.  OTHER DAMAGES:  The Agency violated 5 U.S.C. Section 552a(g)(D), (g)(4) for willfully and intentionally failing to comply with the provisions of Section 552a(b) that proximately caused an adverse effect on the Plaintiff.  Plaintiff requests money damages, attorney fees and costs.

COUNT VI

AGE DISCRIMINATION IN EMPLOYMENT ACT -- 29 U.S.C. § 29 U.S.C. § 621 et seq.<br>AGE DISCRIMINATION IN EMPLOYMENT ACT -- 29 U.S.C. § 633a(a)<br>(Prohibition of Retaliation Against a Federal Employee Who Complains of Age Discrimination)

83.  Plaintiff alleges and files this Age Discrimination in Employment Act ("ADEA") lawsuit under 29 U.S.C. § 633a(a) since the agency retaliated against the Plaintiff for having filed an EEO Complaint alleging ADEA violations and having filed and provided a copy of a Whistleblower Complaint which the Agency knowingly, willfully and intentionally continued to refuse to abide by the ADEA.

84.  Plaintiff alleges that the Agency retaliated by willfully and knowingly causing and allowing the *continuation* of a created and fostered discriminatory, harassing and hostile work

environment based upon age in violation of the ADEA as a result of ASAC/SAC Dax Roberson's managerial direction and conduct where (1) the conduct becomes a condition of continued employment or unreasonable interference with Plaintiff's work performance, and/or (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, which such type of working environment is further cited and prohibited by Agency Policy IG-3780.   The Plaintiff further alleges that ASAC/SAC Roberson's managerial direction and conduct further resulted in a "constructive discharge" work environment adverse employment action in attempting to have the Plaintiff resign or retire due to intolerable work conditions.   The Plaintiff further alleges that Agency officials, specifically including Phyllis K. Fong, Inspector General, Office of Inspector General ("OIG"), USDA, Washington, D.C.; Christy Slamowitz, Attorney, Office of Counsel, OIG, USDA, Washington, D.C.; Lane Timm, Assistant Inspector General, Office of Management, OIG, USDA, Washington, D.C.;   Ann Coffey, Assistant Inspector General, Office of Investigations, OIG, USDA, Washington, D.C.; and Dax Roberson, ASAC/SAC, Office of Investigations, OIG, USDA, Temple, TX; among other Agency officials, were made aware of the Plaintiff's "constructive discharge" environment adverse employment action and failed to address it or provide any of the Plaintiff's requested injunctive relief, but instead, knowingly failed to acknowledge receipt of Plaintiff's reported complaints and willfully condoned and allowed SAC Dax Roberson's managerial discriminatory and disparate decisions/actions and oral and written direct order(s) to remain in effect which further nurtured SAC Dax Roberson's "constructive discharge" environment for the Plaintiff.

85.   Plaintiff alleges that the Agency retaliated by willfully and knowingly causing and allowing the *continuation* of violations of laws, rules, regulations and/or Agency policies which

were committed by the Agency due to the managerial actions implemented by ASAC/SAC Roberson and the actions/inactions taken by Phyllis K. Fong, Christy Slamowitz, Lane Timm and Ann Coffey which included the failure to acknowledge receipt of Plaintiff's reported complaints and having willfully condoned and allowed such actions which further nurtured SAC Dax Roberson's "constructive discharge" work environment for the Plaintiff.

86. The Plaintiff re-alleges the violations listed below in Section A of this Complaint, and the information contained in paragraphs numbered 6 through 20.

A.    Agency's censoring, admonishment and continued refusal to allow Plaintiff to follow and abide by the requirements contained in Agency Policy IG-1518, Disclosure of Potential Impeachment Information and the Agency's adoption of the U.S. Department of Justice Giglio Policy based upon case law Brady v. Maryland, 373 U.S. 83, 87 (1967) and Giglio v. United States, 405 U.S. 150, 154 (1972).  (Time Period of Allegation: March 2013 to Present).

87. The Plaintiff further alleges the Agency refused to accept and investigate the issue(s) stated above in Section A and failed to address the continuance of such reported violation(s) in the purported investigation conducted by a contractor, JDG Associates.  The Plaintiff also alleges this purported investigation was not complete, accurate nor effective in addressing all of the discrimination and retaliation manners reported in the formal EEO Complaint.

88. The Plaintiff re-alleges the violations listed below in Section B of this Complaint, and the information contained in paragraphs numbered 21 through 25.

B.    Alleged violations of the Family and Medical Leave Act of 1993 (FMLA), U.S. OPM Family Friendly Leave Policies (FFLP) and Agency Absence and Leave Policy IG-3630 committed by the Agency – (Time Period: Fall 2014 through Present regarding any further disparate treatment or current/past threat(s) made for any future use of leave that SAC Roberson may utilize)

89. The Plaintiff re-alleges the violations listed below in Section C of this Complaint, and the information contained in paragraphs numbered 26 through 31.

C.  Alleged violations of the Privacy Act of 1974 and Agency Privacy Matters Policy IG-1421 regarding Plaintiff's use of sick leave – (Time Period:  Fall 2014 through Present regarding any

further disparate treatment or threat(s) made for any future use of leave that SAC Roberson may utilize)

90. The Plaintiff re-alleges the violations listed below in Section G of this Complaint, and the information contained in paragraphs numbered 38 through 42.

G. --Alleged Disparate Treatment of Plaintiff in directing the rating official, ASAC Patrick Munday, to list a negative "Needs Improvement" comment on Plaintiff's FY2016 Performance Appraisal – Time Period October 31, 2016 through Present.

91. The Plaintiff re-alleges the violations listed below in Section H of this Complaint, and the information contained in paragraphs numbered 43 through 48.

H. --Questioned special "grouping" and addressing of "eligible" and "mandatory" retirement dates for each Special Agent during September 12, 2016, training session, subsequent email containing special "grouping", and Plaintiff's notification of intent to work one or more years – (Time Period:  September 12, 2016, through Present)

92. The Plaintiff re-alleges the violations listed below in Section I of this Complaint, and the information contained in paragraphs numbered 49 through 55.

I. Three examples of alleged continued discrimination and disparate acts committed by ASAC/SAC Roberson and the Agency.

93. The Plaintiff re-alleges the violations listed below in Section J of this Complaint, and the information contained in paragraphs numbered 56 through 59.

J. Pattern of Harassment Regarding Plaintiff's Opening and Assignment of Criminal Cases

94. The Plaintiff further alleges the agency retaliated against the Plaintiff for having filed an EEO complaint alleging violations of the ADEA and having provided a copy of a filed Whistleblower Complaint which the Agency continued to refuse to abide by the ADEA as evidenced by the following:

A. The Agency failed to acknowledge receipt or address the continued violations of the ADEA on several occasions, including the approximate filing/notification dates:  (1) December 9, 2016, regarding the receipt of a Whistleblower Complaint copy requesting injunctive relief; (2) January

23, 2017, written notice to Agency EEOC Specialist regarding three examples of continued discrimination; (3) June 12, 2017 written notice prepared and sent to Agency officials; and (4) August 24, 2017, written notice addendum further showing continued retaliation occurring; in addition to other partial disclosure(s)/notice(s) at various other times, which the reported violations were being committed against the Plaintiff due to managerial actions and decisions implemented by ASAC/SAC Dax Roberson.

B. The Agency failed to address or grant any of the Plaintiff's requested injunctive relief that Plaintiff be allowed to make all potential Giglio and Brady disclosure(s) to the prosecutor on OIG File No. Te-2748-1425 in accordance with Agency Policy IG-1518 and the adopted U.S. Department of Justice policy. Plaintiff alleges Agency condoned and adopted the practice of allowing any Brady and or Giglio disclosure(s) to be made at the discretion and direction of SAC Dax Roberson contrary to Agency Policy IG-1518.

C. The Agency failed to address or make all necessary Giglio and Brady disclosure(s) known by Agency management officials to the prosecutor on OIG File No. Te-2748-1425 in accordance with Agency Policy IG-1518 and the adopted U.S. Department of Justice policy.

D. The Agency failed to acknowledge or address the Plaintiff's numerous requests to be reassigned to the supervision of an impartial ASAC and SAC.

E. The Agency failed to provide sufficient information to include specificity and SAC Roberson's minimal requirements to meet his expectations in order for the Plaintiff to improve on SAC Roberson's recorded negative "Needs Improvement" comment on Plaintiff's FY 2016 evaluation and FY 2017 performance requirements/expectations.

F. The Agency has failed to follow the Privacy Act of 1974 in providing the requested records contained in the Plaintiff's FOIA and Privacy Act requests filed on December 9, 2016.

95. The Plaintiff requests that this Honorable Court award the Plaintiff money damages, front pay, back pay, unpaid overtime compensation (Law Enforcement Availability Pay) liquidated damages, compensatory damages, punitive damages, mental stress, emotional stress, actual damages, loss of professional opportunities, attorney fees and costs.

———————————

Gomez-Perez v. Potter, Postmaster General, 553 U.S. 474 (2008), held that Section 633a(a) of the ADEA prohibits retaliation against a federal employee who complains of age discrimination.

Pineda v. JTCH Apartments LLC, 843 F.3d 1062 (5th Cir. 2016) held that a Plaintiff alleging retaliation under the FLSA could seek compensation for emotional injuries and acknowledged that the ADEA and FLSA have similar remedies provisions.

COUNT VII

FIRST AMENDMENT RETALIATION CLAIM
(Prohibition of Retaliation Against a Federal Employee Who Complained About Abusive Practice and Implementation of Practice in Violation of Agency Policy IG-1518, Disclosure of Potential Impeachment Information and the Agency's Adoption of the U.S. Department of Justice Giglio Policy) (Time Period of Allegation:  March 2013 to Present).

96. The Plaintiff re-alleges the information contained in paragraphs numbered 9 through 20.

97. Plaintiff alleges the Agency retaliated by willfully and knowingly causing and allowing the *continuation* of a created and fostered discriminatory, harassing and hostile work environment based upon having filed a Whistleblower Complaint alleging allegation(s) in violation of Agency Policy IG-1518 and the Agency's adoption of the U.S. Department of Justice Giglio Policy having been committed as a result of ASAC/SAC Dax Roberson's managerial direction and conduct where (1) the conduct becomes a condition of continued employment or unreasonable interference with Plaintiff's work performance, and/or (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, which such type of working environment is further cited and prohibited by Agency Policy IG-

3780. The Plaintiff further alleges that ASAC/SAC Roberson's managerial direction and conduct further resulted in a "constructive discharge" work environment adverse employment action in attempting to have the Plaintiff resign or retire due to intolerable work conditions. The Plaintiff further alleges that Agency officials, specifically including Phyllis K. Fong, Inspector General, Office of Inspector General ("OIG"), USDA, Washington, D.C.; Christy Slamowitz, Attorney, Office of Counsel, OIG, USDA, Washington, D.C.;  Lane Timm, Assistant Inspector General, Office of Management, OIG, USDA, Washington, D.C.;  Ann Coffey, Assistant Inspector General, Office of Investigations, OIG, USDA, Washington, D.C.; and Dax Roberson, ASAC/SAC, Office of Investigations, OIG, USDA, Temple, TX; among other Agency officials, were made aware of the Plaintiff's "constructive discharge" environment adverse employment action taken against him and failed to address or provide any of the Plaintiff's requested injunctive relief, but instead, knowingly failed to acknowledge receipt of Plaintiff's reported complaints and willfully condoned and allowed SAC Dax Roberson's managerial discriminatory and disparate decisions/actions and oral and written direct order(s) to remain in effect which further nurtured SAC Dax Roberson's "constructive discharge" environment for the Plaintiff.

98.  Plaintiff alleges that the Agency retaliated by willfully and knowingly causing and allowing the *continuation* of violations of laws, rules, regulations and/or Agency policies which were committed by the Agency due to the managerial actions implemented by ASAC/SAC Roberson and the actions/inactions taken by Phyllis K. Fong, Christy Slamowitz, Lane Timm and Ann Coffey which included the failure to acknowledge receipt of Plaintiff's reported complaints and having willfully condoned and allowed such actions which further nurtured SAC Dax Roberson's "constructive discharge" work environment for the Plaintiff.

99.     Plaintiff first asserts he did not confine his communications to his chain of command pursuant only to his official duties, but communicated with individuals or entities outside his chain of command, that included;  (1) USDA OIG officials three or more levels of review above the Plaintiff's position to whom he does not normally report; (2) Agency head officials of other Agency components consisting of Office of Counsel, Office of Compliance and Integrity, Human Resources Management Division and Diversity and Conflict Resolution; (3) Whistleblower Complaint filed with the Office of Special Counsel; (4) and providing information and evidence to an Assistant District Attorney which the Agency had *"censored"* and prohibited the Plaintiff from disclosing in violation of its own Agency Policy IG-1518, which such information was subsequently disclosed to the defendant, the defendant's counsel, and a State Criminal Court Judge which an official and public court record was created to document and account for the Plaintiff's disclosure of the Agency "censored" evidence and information, along with a copy of SAC Roberson's censoring and direct order email dated March 27, 2013.

100.  Plaintiff secondly asserts the Agency censored and prohibited disclosure of subject matter of speech, i.e. the required disclosure of potential Brady and or Giglio information/evidence, was highly relevant, which the Plaintiff raised with the Agency and outside source(s), including the Office of Special Counsel.  Plaintiff further asserts the information contained broad and specific concerns about corruption or systemic abuse condoned by Agency officials two or more levels above his immediate chain of command, which such complaint(s) cannot likely be reasonably classified as being within the Plaintiff's normal job duties as a public employee.

101. Plaintiff thirdly asserts that the matter of speech was in direct contravention to his supervisor's orders, which such speech falls outside of the Plaintiff's professional duties. Plaintiff further asserts the fact that he was discriminated, harassed and or threatened by his superiors for filing the Whistleblower Complaint and subsequently making the required disclosure(s) which was censored and prohibited by the Agency provides strong evidence that the act of speech was not, as a "practical" matter, within the Plaintiff's job duties.

102. Plaintiff finally asserts the Agency took an "adverse employment action" against him in the Agency's refusal to do the following: (1) rescind SAC Roberson's oral and written direct orders that censored and prohibited the Plaintiff ; (2) allow the Plaintiff to follow Agency Policy IG-1518 and make the required disclosure(s); (3) ensure all rights afforded by the U.S. Constitution to the defendant were realized; (4) ensure Plaintiff would be allowed to follow Agency Policy IG-1518 on the subject case and all future cases; and (5) even acknowledge receipt or address the information and subject matter contained in the Whistleblower Complaint.

103. The Plaintiff admits he refused and failed to follow SAC Roberson's oral and written direct order(s) when the Plaintiff instead exercised his first amendment right and made the information and evidence disclosure(s) to numerous officials and sources outside of his normal scope of duty which were required by Agency Policy IG-1518 and was contrary to SAC Dax Roberson's oral and written orders. The Plaintiff asserts that he would have immediately been terminated from his position as a federal law enforcement officer had he not followed Agency Policy IG-1518, and or would have had to commit perjury in a criminal court proceeding to "cover-up" or not disclose the required information and evidence to be in compliance with SAC Roberson's and the Agency's subsequent condoning of SAC Roberson's direct orders.

Dahlia v. Rodriguez, 753 F.3d. 1060 (2013), #10-55978, 2013 WL 4437594, 2013 U.S. App. Lexis 17498 (en banc 9th Cir.). On February 24, 2014, the U.S. Supreme Court denied the City of Burbank's petition to grant hearing (certiorari) in City of Burbank v. Angelo Dahlia, No. 10-55978.

104. On November 30, 2017, the Plaintiff submitted his resignation/retirement request due to the violations committed against him by the Agency, as listed in Counts 1 through 7 of this Complaint which further resulted in the adverse employment action of the Plaintiff having to resign/retire due to the continued constructive discharge and harassment work environment. The resignation/retirement became effective on December 31, 2017. As of the filing of this complaint, the Plaintiff further asserts Count VII of this complaint is also being filed by the Plaintiff in his capacity as an ordinary citizen since he is no longer employed by the Agency due to the damages caused by the Agency to the Plaintiff's employment.

Respectfully Submitted

Michael D. Clutter
Plaintiff

Michael D. Clutter
4019 N. Rondelet Dr.
Spring, TX  77386
(832) 969-0912
E-Mail: mikec1195@msn.com

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY FOR ALL THE ISSUES AND DEMANDS IN THIS CASE.**

**DEFENDANTS TO BE SERVED SUMMONS OR REQUEST TO WAIVE SERVICE OF A SUMMONS:**

Sonny Perdue, Secretary
United States Department of Agriculture
1400 Independence Avenue S.W.
Washington, D.C.  20250

Dax Roberson, Special Agent-in-Charge
United States Department of Agriculture
Office of Inspector General - Investigations
101 S. Main, Room 311
Temple, TX  76501

Phyllis K. Fong, Inspector General
United States Department of Agriculture
1400 Independence Avenue S.W.
Room 117-W, USDA Stop 2301
Washington, D.C.  20250

Christy Slamowitz, Counsel
United States Department of Agriculture
Office of Inspector General
Office of Counsel
1400 Independence Avenue S.W.
Room 441-E, USDA Stop 2308
Washington, D.C.  20250

Lane M. Timm, Assistant Inspector General
Office of Inspector General
Office of Management
1400 Independence Avenue S.W.
USDA Stop 2310
Washington, D.C.  20250

Ann Coffey, Assistant Inspector General – Investigations
United States Department of Agriculture
Office of Inspector General
1400 Independence Avenue S.W.
USDA Stop 2317
Washington, D.C.  20250

United States Attorney
Southern District of Texas
1000 Louisiana St.
Suite 2300
Houston, TX  77002


United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530-0001