UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| MICHAEL D. CLUTTER, | § |  |
| --- | --- | --- |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION H-18-310 |
| SONNY PERDUE, Secretary of Agriculture, U.S. Department of Agriculture, in his official capacity, *et al.*, | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to transfer venue filed by defendants Sonny Perdue, Dax Roberson, Ann Coffey, Phyllis K. Fong, Christy Slamowitz, and Lane Timm (collectively, "Defendants"). Dkt. 16. Plaintiff Michael D. Clutter, who is *pro se*, filed a response. Dkt. 17. Having considered the motion, response, and applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

On February 2, 2018, Clutter filed a *pro se* complaint against Defendants organized into seven different counts alleging various causes of action.[1] Dkt. 1. Clutter was special agent with the U.S. Department of Agriculture ("USDA") located in Shenandoah, Texas.[2] Dkt. 1 ¶ 4. Defendant

---

[1] At the outset, the court notes that it generally gives considerable leeway to *pro se* litigants. From what the court can tell, Clutter alleges violations of the Age Discrimination in Employment Act, 29 U.S.C.S. §§ 621, 633, retaliation against him for filing a whistleblower complaint and an Equal Employment Opportunity Complaint, violations of the Family and Medical Leave Act of 1993, 29 U.S.C.S. § 2611, violations of the Privacy Act of 1974, 5 U.S.C.S. § 522, and a First Amendment Retaliation Claim. Dkt. 20 at 2.

[2] Shenandoah, Texas, is located within the Southern District of Texas.

Dax Roberson worked as an Assistant Special Agent-in-Charge in Temple, Texas, until February 2016 when he was promoted to Special Agent-in-Charge.[3] Dkt. 1 ¶ 5.

Clutter alleges that a number of Defendants' actions resulted in a "constructive discharge." Dkt. 1 ¶¶ 6–8. To begin with, Clutter alleges Defendants violated the Age Discrimination in Employment Act through managerial discrimination by Roberson. *Id.* In November 2012, Clutter was reassigned a case from another agent. *Id.* ¶ 9. Beginning in March 2013, Clutter believed that agency policy required him to make certain *Giglio* or *Brady* disclosures to the prosecutor; however, Roberson presumably ordered him not to make such disclosures.[4] *Id.* In December 2012, Clutter filed a whistleblower complaint concerning these alleged disclosure violations. *Id.* at 13. Later in April 2017, he refused to follow Roberson's orders and made partial disclosures to the Harris County Assistant District Attorney.[5] *Id.* ¶¶ 13-14. Clutter believes that because of Roberson's refusal to allow the disclosures, he suffered negative consequences which fostered an environment of

---

[3]Temple, Texas, is located within the Western District of Texas.

[4]*Brady v. Maryland*, 373 U.S. 83, 87 (1967) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."); *Giglio v. United States*, 405 U.S. 150, 154 (1972) (extended the *Brady* rule to evidence about the credibility of government witnesses). In *Williams v. Dutton*, the Fifth Circuit noted that *Brady* "imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct or impeaching evidence." *Williams v. Dutton* , 400 F.2d 797, 800 (1968).

[5]In June 2017, Clutter also filed a Hotline Complaint regarding Defendant Roberson's actions with the Agency Office of Compliance. Dkt. 1 ¶ 15.

"constructive discharge."[6] *Id.* ¶ 20. Clutter asserts that this discriminatory environment eventually induced his retirement. *Id.*

In addition to the alleged issues with the disclosures, Clutter alleges that beginning in the Fall of 2014, Roberson began retaliating against him for previously taken sick leave, and that Roberson threatened and bullied Clutter for attempting to take additional sick leave. *Id.* ¶ 22. Clutter focuses on a December 2015 email from Roberson. *Id.* ¶ 22. Clutter wrote to Roberson asking to re-schedule a January 2016 training course to a Spring 2016 training course, as he had developed serious unresolved medical conditions in 2015 which required continued medical testing. *Id.* In Roberson's reply, he brought up a Fall 2014 trip Clutter cancelled because he had to care for his elderly parents; Clutter perceived this as bullying and retaliation. *Id.* Clutter also alleges that Roberson wrote him saying that if he presented a doctor's note, then he would be excused from the training class, but that such a letter could be detrimental to his physical performance evaluation as an agent. *Id.* Clutter took this as a threat and harassment.[7] *Id.* ¶¶ 23–25, 29–31. Clutter also alleges that Roberson violated the Privacy Act by attempting to use information about Clutter's past medical leave caring for his elderly parents to bully him. *Id.* ¶¶ 23–25.

---

[6]Clutter alleges that the following led to his "constructive discharge": (1) he had to violate OIG Policy 1518 to comply with Defendant Roberson's orders; (2) he had to violate and refuse those orders to make *Giglio* and *Brady* disclosures he believed necessary; (3) he may have had to commit perjury or other violations to "cover-up" initially undisclosed evidence if a trial had commenced; and (4) his top-secret security clearance may have been jeopardized if he had followed Roberson's orders. Dkt. 1 ¶ 20.

[7]Clutter further alleges that Roberson is not designated as a Agency Medical Review Officer, who would be normally consulted if adverse actions would be taken based upon an employee's on-going health issue. Dkt. 1 ¶ 35.

Next, Clutter alleges disparate treatment during and after a September 2016 Firearms training.[8] *Id.* ¶¶ 32–37. Clutter suffered an on-the-job knee injury while attending Control Tactics Training. *Id.* ¶ 32. Clutter alleges that Roberson told him to "get out there and shoot" even after he complained of his injury. *Id.* ¶ 34. He also alleges that Roberson made a confrontational comment to Clutter around other agents. *Id.* Clutter states that he did not seek any medical attention through the Federal Employees Compensation Act for fear of further retaliation from Roberson. Id ¶ 35.

At some later point, Clutter found out from one of his supervisors, Patrick Munday, that Roberson had left a "needs improvement" comment in Clutter's FY2016 Performance Appraisal in his personnel file after the Firearms Training. *Id.* ¶ 39. Clutter believes that because of Roberson's failure to describe how Clutter could improve, he was placed at a significant disadvantage in comparison with other agents. *Id.* ¶ 54.

Clutter asserts that he filed an informal Equal Employment Opportunity Complaint with the Agency in 2016.[9] *Id.* ¶ 50. He contends that Roberson continued to discriminate against him after this complaint. *Id.* Specifically, he points to three incidents, including Roberson continuing to prohibit him from making the disclosures he believed necessary. *Id.* ¶ 51. Further, he claims that Roberson harassed him and was overly critical of insignificant matters, including an incident when Roberson sent Clutter an email admonishing him for using the agency phone line for "personal matters."[10] *Id.* ¶ 52. Lastly, Clutter takes issue with the fact that Roberson did not provide follow-up guidance on his FY2016 "need improvement" rating. *Id.* ¶ 53. Clutter further believes that since

---

[8]Neither Clutter nor Defendants discuss where the Firearms Training took place.

[9]Clutter claims that he filed a formal Equal Employment Opportunity Complaint in March 2017. Dkt. 1 ¶ 4.

[10]Clutter had listed his work phone for employment verification purposes while attempting to secure a loan, which he says is a common office practice. Dkt. 1 ¶ 52.

March 2017, Roberson has placed greater scrutiny on which cases are assigned to Clutter, and there exists an "extraordinary delay" in his case assignment. *Id.* ¶ 58.

Clutter also has issues with powerpoints and emails that Roberson shared with multiple agents grouping him in the "older or retirement eligible group." *Id.* ¶ 44. Clutter believes that by broadcasting his eligible-to-retire date, Roberson made it so that anyone could easily deduce his age. *Id.*

Clutter's other allegations center around the December 2015 sick leave email exchange, the Agency's refusal to allow Clutter to make disclosures he believed necessary, an alleged retaliation against his First Amendment rights associated with refusal to allow him to make disclosures, and a failure to provide him with what he calls "injunctive relief." Dkts. 35–60.

Clutter originally filed this action in the Southern District of Texas ("SDTX"). Dkt. 1. On May 16, 2018, Defendants filed a motion to transfer venue to the Western District of Texas ("WDTX") pursuant to 28 U.S.C. § 1404(a). The motion is now ripe for disposition.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The district court has broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987). The moving party bears the burden of showing why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). In evaluating a § 1404(a) motion to transfer, the court examines (1) whether the action "might have been brought" in the transferee forum, and (2) whether there is "good cause" for transferring the action. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).

5

Courts have adopted the *forum non conveniens* private and public interest factors to determine whether a § 1404(a) venue transfer is convenient for the parties and the witnesses and in the interest of justice. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315; *see Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S. Ct. 839 (1947)). The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* While the United States Supreme Court has given district courts some guidance with regard to the factors to take into consideration, none have dispositive weight, and "they are not necessarily exhaustive or exclusive." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315 (citing *Gulf Oil Corp.*, 330 U.S. at 508); *see Atl. Marine Constr. Co. v. United States Dist. Court,* 571 U.S. 49, 63 n.6, 134 S. Ct. 568 (2013). However, unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice in forum should be respected. *Gulf Oil Corp.*, 330 U.S. at 508.

### III. ANALYSIS

Defendants allege that this action could have been filed in the WDTX, and Clutter does not dispute this. Dkt. 16 at 4–5; Dkt. 18 at 4. The court will address the private and public interest factors pertaining to both venues. The court will also consider Clutter's venue choice; however, it will not be determinative.

A.      **Private Interest Factors**

First, with respect to the relative ease of access to sources of proof, Defendants argue that the majority of the important sources of proof are located within the District of Columbia. Dkt. 16 at 7. Clutter disagrees, arguing the majority of sources of proof are located in the SDTX. Dkt. 18 at 6. While there have been many technological advances in the production of documents, courts have reiterated that the sources of proof requirement is still a meaningful factor in venue transfer analysis. *In re Volkswagen of Am,. Inc.*, 545 F.3d at 316 (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). It appears there are likely documents both in D.C. and the SDTX. Because there are no arguments regarding documents in WDTX, this factor is either neutral or weighs in favor of denying transfer to the WDTX.

Second, Defendants argue that there are more third party witnesses residing in the transferee venue, which favors transfer. Dkt. 16 at 7 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 304). Furthermore, they argue that the factor heavily weighs in favor of transfer when a transferee venue has "absolute subpoena power."[11] *Id.* Defendants plan to call fourteen witnesses, eleven of whom work for the USDA and three who no longer work at the USDA. Dkt. 16 at 8. Seven of the current USDA-employed witnesses reside outside of both the WDTX and the SDTX, two reside within the WDTX, and two reside within the SDTX. *Id.* at 8–10. Defendants focus on the courts' subpoena power over the former USDA employees they plan to call as witnesses, two of whom live in the

---

[11]"[A]bsolute subpoena power [is] subpoena power for both depositions and trial." *In re Hoffmann-La Roche Inc.*, 587 F.3d 133, 1338 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 316). Federal courts have subpoena power for depositions and hearings "within 100 miles of where the person resides, is employed, or regularly transacts business" and trial subpoena power "within the state where the person resides, is employed, or regularly transacts business . . . if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(iii); Fed. R. Civ. P. 25(c)(2)(A).

7

WDTX, and one who lives in Kansas. *Id.* The SDTX would not have absolute subpoena power over the two witnesses who reside within the WDTX, but the WDTX would.[12] *Id.* at 10. Citing that four witnesses reside in the WDTX, two of whom the SDTX would not have subpoena power over, and that only two witnesses reside in the SDTX, the Defendants argue that transfer is appropriate. *Id.* at 10–11.

Clutter, however, disagrees that only two non-party witnesses reside within the SDTX. Dkt. 18 at 7. He plans to call eleven additional non-party witnesses who reside within the SDTX. Dkt. 18 at 7–10. The WDTX would not have absolute subpoena power over any of these witnesses. *Id.*

Overall, the SDTX does not have absolute subpoena power over two witnesses who reside in the WDTX, while the WDTX does not have absolute subpoena power over eleven witnesses who reside in the SDTX. Dkt. 16 at 7–11; Dkt. 18 at 7–10. The court finds the availability of the compulsory process favors denying transfer.[13]

Third, with respect to the cost of attendance for willing witnesses, Defendants assert that eight of their potential witnesses reside closer to the WDTX. Dkt. 16 at 11–13. However, there are seventeen other witnesses, including those whom Clutter is prepared to call, who reside closer to the SDTX. *Id.*; Dkt. 18 at 10–12. The court finds this factor weighs in favor of denying transfer.

---

[12]The SDTX would still have trial subpoena power over these two witnesses, but not subpoena power for depositions and hearings. Fed. R. Civ. P. 45(c)(1)–(2).

[13]The court takes notice that the depositions of two non-party witnesses residing in the WDTX (Mary Lewis and Paul Parker) could be taken in the WDTX.

Neither party raises an issue regarding "all other practical problems that make trial of a case easy, expeditious, and inexpensive," so this factor is inapplicable.[14] Dkt. 16 at 13; Dkt. 18 at 12.

In sum, the court finds that the private interest factors weigh in favor of denying venue transfer to the WDTX.

**B.    Public Interest Factors**

With regard to the first factor, administrative difficulties, Defendants argue that there is a 1.2 month difference in the average time between filing and trial of civil cases between the two districts. Dkt. 16 at 13. The court finds this time difference negligible; these two venues are nearly equivalent in terms of time from filing to disposition. Ths factor is therefore neutral.

Second, with regard to local interest, the parties disagree completely about where the alleged events took place. Dkt. 16 at 13; Dkt. 18 at 13. Defendants argue that most, if not all, of the actions took place in the WDTX, while Clutter believes that the actions took place in the SDTX. *Id.* Because Clutter worked in, and currently resides in, the SDTX, the court finds that there is a sufficient local interest in having the case decided in Houston.

Finally, neither party makes an argument regarding the familiarity of the forum with the law or with conflicts of law. Dkt. 16 at 14; Dkt. 18 at 15. The case revolves around federal law, and so the court agrees that these factors are neutral.

In sum, the court finds that the public interest factors weigh against transfer.

Taking into account the plaintiff's choice of forum and the private and public factors weighing against transfer, the court finds that Defendants have not met their burden of showing good cause to transfer venue. Therefore, Defendants's motion to transfer venue (Dkt. 16) is DENIED.

---

[14]Clutter mentions he has submitted a settlement offer proposal to which Defendants have not yet responded. Dkt. 18 at 12. The court does not find this to be relevant.

## IV. Conclusion

Defendants have failed to meet their burden to show a good cause for to transfer venue. Accordingly, Defendants's motion to transfer venue (Dkt. 16) is DENIED.

Signed at Houston, Texas on June 25, 2018.

_____
Gray H. Miller
United States District Judge