IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL D. CLUTTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-310 |
| | § | |
| SONNY PERDUE, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendants' Motion to Dismiss (Doc. 26). The court has considered the motion, Plaintiff's response, Defendants' reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

## I. Case Background[2]

Plaintiff is a retired special agent with U.S. Department of Agriculture ("USDA"), Office of Inspector General ("OIG").[3] On February 2, 2018, he filed this employment action against a former supervisor, multiple officials with the USDA, and the U.S. Attorney

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 22, Ord. Dated June 27, 2018.

[2] For purposes of deciding the pending motion to dismiss, the court need not discuss every detail of Plaintiff's sixty-page complaint. A detailed discussion of Plaintiff's factual allegations can be found in the court's prior Memorandum Opinion and Order issued on June 25, 2018. See Doc. 21, Mem. Op. & Ord. Dated June 25, 2018 pp. 1-5.

[3] Doc. 1, Compl. p. 2.

General.[4]

As Plaintiff explains, he filed this lawsuit:

> to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to Plaintiff by the First, Fourth[,] and Fourteenth Amendment[s] to the Constitution of the United States, and through the Age Discrimination in Employment Act [("ADEA")],[5] . . . [the] Family and Medical Leave Act [("FMLA")],[6] . . . [the] Privacy Act[7] . . . and protection(s) from First Amendment Retaliation.[8]

Plaintiff lodged complaints about the "managerial direction and conduct" of Defendant Dax Roberson ("Roberson"), who was an assistant special agent-in-charge ("ASAC") until early 2016 when he was promoted to special agent-in-charge.[9]  Plaintiff alleged that Defendant Roberson's actions "resulted in an adverse employment action of a 'constructive discharge' work environment in attempting to have the Plaintiff resign or retire due to intolerable work conditions."[10]

---

[4]   See Doc. 1, Compl.

[5]   See 29 U.S.C. §§ 621-634.

[6]   See 29 U.S.C. §§ 2601-2654.

[7]   See 5 U.S.C. § 552a.

[8]   Doc. 28, Pl.'s Resp. to Defs.' Mot. to Dismiss pp. 4-5; see also Doc. 1, Compl. pp. 1-2.

[9]   Doc. 1, Pl.'s Compl. pp. 3-4; see also id. pp. 4-58.
The court infers from the complaint that Defendant Roberson was no longer Plaintiff's direct supervisor after Defendant Roberson's promotion in early 2016. See id. pp. 3-4, 35.  According to the complaint, non-party Patrick Munday, ASAC, was Plaintiff's direct supervisor at least as of October 31, 2016.  See id. pp. 11, 27, 35.

[10]   Id. p. 4.

According to Plaintiff, Defendants Sonny Perdue, U.S. Secretary of Agriculture; Phyllis K. Fong, Inspector General for the USDA; Christy Slamowitz, Counsel to the Inspector General; Lane Timm, Program Manager for the OIG; and Ann Coffey ("Coffey"), Assistant Inspector General, inter alia, "knowingly failed to acknowledge receipt of Plaintiff's reported complaints and willfully condoned and allowed [Defendant] Roberson's managerial discriminatory and disparate decisions/actions and oral and written direct order(s) to remain in effect which further nurtured [Defendant] Roberson's 'constructive discharge' environment for the Plaintiff."[11]

In the months after Plaintiff was assigned an ongoing criminal investigation in November 2012, Plaintiff developed concerns that certain information needed to be disclosed to the prosecutor.[12] Plaintiff addressed these concerns and his investigative findings with Defendant Roberson on multiple occasions, but Defendant Roberson expressed disagreement with Plaintiff and directed Plaintiff not to disclose the information.[13] More than three years later, in April 2016, Plaintiff partially disclosed the information

---

[11]   Id. p. 4-5, 55; see also, e.g., id. pp. 11-13, 15, 50-51, 55.
Although listed on the docket sheet, former U.S. Attorney General Jeff Sessions ("Sessions") is not named in the caption of the complaint or mentioned in either his individual or official capacity anywhere in the complaint. Therefore, the court finds that he is not a party to this action.

[12]   See Doc. 1, Compl. pp. 5-7.

[13]   See id. pp. 6-11.

to an assistant district attorney.[14]

Although the employment actions about which Plaintiff complained began at least as far back as 2012, Plaintiff did not begin administrative proceedings until December 9, 2016, when he filed a Whistleblower Complaint with the U.S. Office of Special Counsel,[15] submitted document requests pursuant to the Freedom of Information Act ("FOIA") and the Privacy Act, and initiated contact with OIG equal employment opportunity ("EEO") counseling.[16]

The Whistleblower Complaint alleged violations of OIG policy and federal law based on Defendant Roberson's instructions that Plaintiff not report what Plaintiff understood to be required disclosures in a criminal case.[17]   The OIG never acknowledged the receipt of the complaint and never addressed its content.[18]   As a followup, in June 2017, Plaintiff filed a "Hotline Complaint regarding [Defendant] Roberson's actions with the [OIG] Office of Compliance" and, in August 2017, an addendum thereto.[19]   According to Plaintiff, the Hotline Complaint triggered an investigation over

---

[14]   See id. pp. 11-12.

[15]   The complaint states both that Plaintiff filed the Whistleblower Complaint on November 28, 2016, and that he filed it on December 9, 2016. Compare id. p. 3 with id. p. 11.

[16]   See id. pp. 3, 11, 44; Doc. 26-2, Ex. 1 to Defs.' Mot. to Dismiss, EEO Intake Form.

[17]   Doc. 1, Compl. p. 11.

[18]   See id.

[19]   Id. pp. 12-13.

which Coffey retained authority to determine whether any action would be taken.[20]

Regarding Plaintiff's document requests pursuant to FOIA and the Privacy Act, Plaintiff described his twenty-four requests as "related to many issues contained in this lawsuit," specifically documentation regarding a "Needs Improvement" assessment on Plaintiff's 2016 performance appraisal, a "secret inquiry" by the OIG regarding an injury Plaintiff suffered on the firearms range, a "supervisor's file," any "drop files," and the criminal investigation to which Plaintiff was assigned in 2012 related to the disclosure of information, as well as "other documentation related to issues in this lawsuit."[21]

The FOIA/Privacy Act staff emailed Plaintiff on January 10, 2017, to notify him that his request had been received.[22]   On February 14, 2017, Plaintiff inquired on the status of his information request, to which he received the explanation that his request was categorized as complex and estimated a completion date

---

[20]    See id. p. 12.  The court infers that Coffey took no action, although the complaint does not explicitly state Coffey's determination.  See id.

[21]    Id. p. 44 (internal quotation marks omitted); see also id. pp. 45-47.

[22]    See Doc. 26-6, Ex. 5 to Defs.' Mot. to Dismiss, Email from FOIA/Privacy Act Staff to Pl. Dated Jan. 10, 2017. This exhibit is attached to Defendants' motion to dismiss and is central to Plaintiff's claim.  Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004)("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.").

of March 20, 2017.[23]  Plaintiff repeatedly followed up on his request and repeatedly received postponed completion-date estimates.[24]  As of the date on which Plaintiff filed this action, which was fourteen months after he filed the information requests, Plaintiff had received no records.[25]

Regarding Plaintiff's initial contact with the OIG EEO staff on December 9, 2016, Plaintiff reported that he had experienced age discrimination that occurred October 31, 2016, through November 3, 2016.[26]  Two alternative dispute resolution ("ADR") sessions convened on February 17, 2017, and March 9, 2017, to address the Plaintiff's employment issues.[27]  On March 21, 2017, Plaintiff filed formal EEO complaint.[28]  In a letter dated April 20, 2017, the USDA notified Plaintiff that the following issues were accepted for

---

[23]     See Doc. 1, Compl. p. 45; Doc. 26-6, Ex. 5 to Defs.' Mot. to Dismiss, Email from Pl. to FOIA/Privacy Act Staff Dated Feb. 14, 2017; Doc. 26-6 Ex. 5 to Defs.' Mot. to Dismiss, Email from FOIA/Privacy Act Staff to Pl. Dated Feb. 14, 2017.

[24]     See Doc. 1, Compl. p. 45; Doc. 26-6 Ex. 5 to Defs.' Mot. to Dismiss, Email Communications Between FOIA/Privacy Act Staff & Pl. Dated Mar. 21, 2017, May 22, 2017, July 7, 2017, July 11, 2017, Sept. 18, 2017, Sept. 21, 2017.

[25]     See Doc. 1, Compl. p. 45.

[26]     See Doc. 26-2, Ex. 1 to Defs.' Mot. to Dismiss, EEO Intake Form.
In his complaint, Plaintiff did not describe the contents of his initial contact with the EEO counselor.  The court looked to the copy of the EEO Intake Form submitted by Defendants simply for a general description.  The court notes, however, that the form references other materials that do not appear as part of Defendants' exhibit, which renders the exhibit insufficiently reliable for any definitive consideration.  For purposes of the court's rulings herein, neither the general description nor the apparently missing materials are material.

[27]     See Doc. 1, Compl. p. 3.

[28]     See id.  In his complaint, Plaintiff provided no additional information regarding the issues reported.

6

investigation: (1) the refusal of Plaintiff's supervisor to provide specific information regarding the "Needs Improvement" rating on Plaintiff's 2016 Performance Appraisal; (2) the "secret" inquiry into Plaintiff's on-the-job knee injury; and (3) seven actions taken between December 2015 and March 2017 that Plaintiff alleged were incidents of harassment.[29]   The letter also explained the investigative process.[30]

On August 23, 2017, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") after the completion of the EEO investigation.[31]   An EEOC administrative judge entered an Order of Dismissal on Plaintiff's charge of discrimination upon notification that Plaintiff sought to withdraw his request for a hearing in favor of filing this action.[32]

In the meantime, Plaintiff filed an Application for Immediate Retirement on November 30, 2017, notifying his employer that he intended to retire on December 31, 2017.[33]   Also on November 30,

---

[29]   Doc. 26-3, Ex. 2 to Defs.' Mot. to Dismiss, Letter from Candace Glover to Tamecia Glover Dated April 20, 2017 pp. 1-2. This exhibit is attached to Defendants' motion to dismiss and is central to Plaintiff's claim.  See Causey, 394 F.3d at 288.

[30]   See Doc. 26-3, Ex. 2 to Defs.' Mot. to Dismiss, Letter from Candace Glover to Tamecia Glover Dated April 20, 2017 pp. 2-4.

[31]   See Doc. 1, Compl. p. 3.  In his complaint, Plaintiff provided no additional information regarding the issues reported.

[32]   See Doc. 26-4, Ex. 3 to Defs.' Mot. to Dismiss, Ord. of Dismissal. The Order of Dismissal is mentioned only as background and is not material to any issue decided by the court in this Memorandum and Recommendation.

[33]   See Doc. 1, Compl. p. 58; Doc. 26-5, Ex. 4 to Defs.' Mot. to Dismiss, Appl. for Immediate Retirement.  The application for retirement is attached to Defendants' motion to dismiss and is central to Plaintiff's claim.  See Causey,

2017, Plaintiff filed a Notice of Intent to Sue Under the ADEA with the EEOC and received notice of receipt on December 13, 2017.[34]  On December 31, 2017, Plaintiff retired.[35]  On February 2, 2018, Plaintiff filed this lawsuit.[36]

## II.  Dismissal Standards

Defendants challenge Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

## A.  <u>Rule 12(b)(1)</u>

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), 12(h)(3).   The party asserting jurisdiction bears the burden of proof that jurisdiction does exist.  <u>Morris v. Thompson</u>, 852 F.3d 416, 419 (5th Cir. 2017)(citing <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001)).

The court may decide a motion to dismiss for lack of jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  <u>Ramming</u>, 281 F.3d at 161 (quoting <u>Barrera-Montenegro v. United States</u>, 74 F.3d 657, 659

---

394 F.3d at 288.

[34]     <u>See</u> Doc. 1, Compl. p. 3.

[35]     <u>See</u> <u>id.</u> p. 58.

[36]     <u>See</u> Doc. 1, Compl.

(5th Cir. 1996)).  The court should decide the Rule 12(b)(1) motion before addressing any attack on the merits of a claim.  <u>Ramming</u>, 281 F.3d at 161.

**B.  <u>Rule 12(b)(6)</u>**

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting <u>True v. Robles</u>, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

9

### III. Analysis

In Plaintiff's response, he clarified that the only legal claims alleged were pursuant to the ADEA, FMLA, Privacy Act, and First Amendment.  Defendants move for dismissal of all four of Plaintiff's claims.  In response to Defendants' argument that, as a federal employee with more than twelve months of service, Plaintiff does not have a private right of action for FMLA violations, Plaintiff requested that his FMLA claim be dismissed.

**A.  ADEA**

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age."  29 U.S.C. § 623(a)(1).  As an employer, the federal government "provide[s] equal opportunity in employment for all persons [and] prohibit[s] discrimination in employment because of . . . age."  29 C.F.R. § 1614.101(a).

Federal employees' complaints of employment discrimination prohibited by the ADEA are subject to a forty-five-day reporting requirement.  See 29 C.F.R. § 1614.105(a).  An aggrieved employee must initiate contact with an agency EEO counselor within forty-five days "of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a).  Upon

10

completing the initial counseling activities, the aggrieved individual may elect to either proceed with an EEOC complaint or file a civil action in federal district court. <u>See</u> 29 C.F.R. § 1614.105(b) (including this option in the list of information to be provided at the initial counseling session); 29 C.F.R. § 1614.106 (outlining the EEOC administrative-complaint process); 29 C.F.R. § 1614.201(a) (stating the post-counseling, court alternative to filing an EEOC administrative complaint for ADEA claims).

Plaintiff's ADEA claim is based on his allegation that he was "constructively discharged when he retired on December 31, 2017."[37] Plaintiff does not argue that he timely initiated contact with an agency EEO counselor regarding the alleged age-related constructive discharge. Rather, Plaintiff offers two alternative arguments.

The first is that he exhausted all administrative remedies by filing a written Notice of Intent to Sue Under the ADEA with the EEOC on November 30, 2017, and filing suit more than thirty days later. The second argument is that, in his informal complaint of December 9, 2016, Plaintiff included factual allegations that Defendant Roberson perpetrated a continuing violation of discrimination that culminated in Plaintiff's constructive discharge by retirement more than a year later.

The first of Plaintiff's arguments reflects an incorrect reading of the regulations, which unambiguously require that an

---

[37]     Doc. 28, Pl.'s Resp. to Defs.' Mot. to Dismiss p. 8.

aggrieved individual fulfill the forty-five-day reporting requirement regardless of whether he later selects to proceed with a formal EEOC complaint or with a civil action.  As Plaintiff does not contend that he made initial contact with a counselor *after* the alleged constructive discharge, he could not possibly have exhausted administrative procedures prior to filing this civil action.  Filing a Notice of Intent to Sue Under the ADEA does not satisfy the forty-five day requirement.

The second of Plaintiff's arguments is factually unsupported and cannot redeem his ADEA claim.  Plaintiff contends that his December 2016 informal complaint included allegations of discrimination that were "either discovered within the 45 days prior to December 9, 2016, and/or had a 'continuing violation' effect at the time of filing."[38]  He continues by stating that his subsequent formal EEOC complaint alleged:

> Defendant Roberson willfully and knowingly created and fostered a "continuing violation[,]" under the "continuing violation doctrine[,]" of discriminatory, harassing and hostile work environment where Defendant Roberson's conduct became (1) a condition of continued employment or unreasonably interfered with work performance, and/or (2) the conduct was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive . . . . [and] further alleged in his [EEOC] [c]omplaint that Defendant Roberson's managerial direction and conduct further resulted in a "constructive discharge" environment in attempting to have . . . Plaintiff resign or retire due to intolerable working conditions.[39]

---

[38]     Id. p. 9.

[39]     Id. pp. 9-10.

12

Nevertheless, without a crystal ball, Plaintiff would not have been able to predict that the alleged continuing violation would lead to a constructive discharge nearly a year later. In other words, Plaintiff could not report a constructive discharge until it actually happened. The forty-five-day period within which to contact an EEO counselor about Plaintiff's alleged constructive discharge by retirement did not begin to run until nearly a year after he filed the December 2016 informal complaint. That is, Plaintiff's constructive-discharge claim did not accrue until he announced his intent to retire on November 30, 2017. Cf. Green v. Brennan, ____ U.S. ____, 136 S.Ct. 1769, 1782 (2016)(stating that notice of resignation, not the last day of employment, starts the limitations period on a constructive-discharge claim). Plaintiff does not allege or argue that he contacted an EEO counselor within forty-five days *after* he announced retirement.

Plaintiff failed to exhaust administrative remedies on his ADEA claim. The claim should be dismissed.

## B. **Privacy Act**

The Privacy Act "contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies." F.A.A. v. Cooper, 566 U.S. 284, 287 (2012). An individual may bring a civil action against an agency whenever the agency:

> (A) makes a determination . . . not to amend an
> individual's record in accordance with his request, or
> fails to [review the refusal to amend in accordance with

13

the statutory requirements];

(B) refuses to comply with an individual request ["to gain access to his record or to any information pertaining to him which is contained in the system, . . . to permit him . . . to review the record and have a copy made of all or any portion thereof"];

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual.

5 U.S.C. § 552a(d), (g)(1). For these provisions of the Privacy Act, the statute imposes a two-year limitations period from the date on which the cause of action arises. 5 U.S.C. § 552a(g)(5).

The USDA regulations pertaining to requests under the Privacy Act require that the individual "request[ing] correction or amendment of any record pertaining to him . . . contained in a system of records maintained by an agency . . . submit that request in writing." 7 C.F.R. § 1.116(a). The written request must include the requestor's name, the name of the system of records, a description of the nature and substance of the correction or amendment requested, and any other information specified in the system notice. 7 C.F.R. § 1.116(a). If the request is denied, the requestor may appeal within the agency and, if the appeal is denied, may file a civil action. 7 C.F.R. § 1.116(c), (d).

A similar process is available to an individual seeking "to be notified if a system of records maintained by an agency contains any record pertaining to him . . . or to request access to such records." Compare 7 C.F.R. § 1.112 with 7 C.F.R. § 1.116. That written request must include:

> (1) The name of the individual making the request;
> (2) The name of the system of records . . . ;
> (3) Any other information specified in the system notice; and
> (4) When the request is one for access, a statement as to whether the requester desires to make a personal inspection of the records, or be supplied with copies by mail.

7 C.F.R. § 1.112 (a). If the request is denied, the requestor may appeal within the agency and, if the appeal is denied, may file a civil action. 7 C.F.R. § 1.112 (b), (c).

Pursuant to these provisions, the court may order the agency to amend the individual's record or may order the production of records improperly withheld. 5 U.S.C. § 552a(g)(2)(A), (3)(A). The court also may assess reasonable attorneys' fees and litigation costs in any case in which the plaintiff "has substantially prevailed." 5 U.S.C. § 552a(g)(2)(B), (3)(B).

For actions brought under 5 U.S.C. § 552a(g)(1)(C) or (D) "in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual" for "actual damages sustained by the individual as a result of the refusal or failure." 5 U.S.C. 552a(g)(4). "Actual damages," as used in the statute, refers to special damages. See

F.A.A., 566 U.S. at 290-304.  "'Special damages' are limited to actual pecuniary loss, which must be specially pleaded and proved" as opposed to "general damages," which include "loss of reputation, shame, mortification, injury to the feelings and the like" and need not be alleged in detail.  Id. at 295.  Special damages do not include "damages for mental or emotional stress," for which the Privacy Act does not waive sovereign immunity.  Id. at 287, 304.

The court understands Plaintiff's complaint to accuse the OIG of violating the Privacy Act by failing to correct or amend records concerning Plaintiff's use of sick leave, his on-the-job knee injury, and his negative performance appraisal.  Additionally, Plaintiff alleged that the OIG violated the Privacy Act by failing to produce any of the records he requested in December 2016. He further alleged that the OIG violated the Privacy Act by "maintain[ing] inaccurate, irrelevant, false and incomplete record(s)" on Plaintiff and "fail[ing] to properly 'maintain' record(s)."[40]  Plaintiff points specifically to: (1) FMLA leave-request and medical-necessity records; (2) ongoing health records; and (3) records of "secret inquiry/investigation" regarding Plaintiff's on-the-job knee injury.[41]

With regard to these violations, Plaintiff contends that the OIG violated all four subsections of the Privacy Act's civil-remedies provision.  For the claims falling under 5 U.S.C. §

---

[40]     Doc. 1, Compl. pp. 37, 41, 44.

[41]     See id. pp. 38-39, 42.

552a(g)(1)(A) and (B), Plaintiff requested injunctive relief, attorneys' fees, and costs. For the claims falling under 5 U.S.C. § 552a(g)(1)(C) and (D), Plaintiff alleged that the OIG "willfully and intentionally" failed to comply and requested "money damages, attorney fees and costs, mental distress, emotional distress, actual damages, loss of professional opportunities[, and] familial loss."[42] Plaintiff alleged that the resultant adverse effects were the creation of "a 'constructive discharge' work environment," negative performance decisions, failure to promote, and lost job opportunities at other federal law enforcement agencies.[43]

Concerning the claim falling under 5 U.S.C. § 552a(g)(1)(B), Plaintiff sufficiently pled that he submitted a FOIA/Privacy Act request for records, that the OIG never denied the request but failed to even acknowledge the existence of any of the requested records, much less produce them. This claim survives the pleading stage and, ultimately may entitled Plaintiff to a court order directing the OIG to fulfill Plaintiff's request for records. On the other hand, neither that request nor any other request identified by Plaintiff addressed the amendment of any record. Plaintiff thus failed to exhaust administrative remedies on the claim falling under 5 U.S.C. § 552a(g)(1)(A). That claim should be dismissed.

---

[42]    Id. pp. 41, 43, 49; see also id. p. 40.

[43]    Id. pp. 40, 43, 49. Plaintiff offered no factual support for his allegations regarding promotion and other failed career opportunities.

Concerning the claims falling under 5 U.S.C. § 552a(g)(1)(C) and (D), Plaintiff faces multiple obstacles.  With regard to Plaintiff's claims under 5 U.S.C. § 552a(g)(1)(C), the creation of certain objectionable records and/or certain other actions about which Plaintiff complains concerning improper maintenance of records appear to have occurred outside the two-year limitations period. Overall, Plaintiff's complaints about improper maintenance are too general to explain specifically how the identified records were improperly maintained.  In fact, Plaintiff left little doubt that he did not know whether all of the records he requested existed at all.

For the claims under 5 U.S.C. § 552a(g)(1)(D), Plaintiff failed to state a claim because he did not identify what other provision(s) of the Privacy Act the OIG had violated.  Most importantly by far because it is a matter of subject matter jurisdiction is Plaintiff's failure to plead in detail actual damages sustained as a result of the refusal or failure to maintain any record or to comply with any other provisions of the Privacy Act.  Although Plaintiff requested "actual damages," he did not allege any actual pecuniary loss.  The U.S.C. § 552a(g)(1)(C) and (D) claims should be dismissed.

## C.  First Amendment Retaliation

The First Amendment[44] protects against "official reprisal for

_____

[44]    The language of the First Amendment is:

Congress shall make no law respecting an establishment of religion,

18

protected speech." Hartman v. Moore, 547 U.S. 250, 256 (2006). Government officials may not subject an individual to retaliatory actions for speaking out. Id.

When the government officials are federal, an individual cannot pursue a First Amendment cause of action under 42 U.S.C. § 1983 because that statute requires a plaintiff to establish that the defendant deprived the plaintiff of constitutional rights while acting *under the color of state law*. Cf. Moody v. Farrell, 868 F.3d 348, 351 (5th Cir. 2017)(stating the elements of proof for a 42 U.S.C. § 1983 claims). Constitutional claims against federal agents must be raised pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See Ybarra v. Tex. Health & Human Servs. Comm'n, Civil Action No. B-17-174, 2018 WL 3949972, at *7 (S.D. Tex. June 13, 2018)(slip copy)(citing Iqbal, 556 U.S. at 675-76)("Bivens actions are the federal analog to suits brought against state actors under 42 U.S.C. § 1983.").

However, Bivens actions are available only for constitutional violations of the Fourth Amendment, the Fifth Amendment Due Process Clause, and the Eighth Amendment Cruel and Unusual Punishments Clause. Id. (citing Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 67 (2001)). "Expanding Bivens beyond its previously recognized

---

or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

boundaries is a 'disfavored' remedy." <u>Id.</u> (quoting <u>Ziglar v.</u> <u>Abbasi</u>, ___ U.S. ___, 137 S.Ct. 1843, 1857 (2017)).

Specifically addressing employment relationships with the federal government, a sister court recently explained:

> The Supreme Court has previously concluded that, when "claims <u>arise out of</u> an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States," there is no <u>Bivens</u> remedy. <u>Bush v. Lucas</u>, 462 U.S. 367, 368 (1983)(emphasis added). . . . . Numerous federal courts have held that the language of <u>Bush</u> - concerning claims that "arise out of an employment relationship" - is so broad that it covers claims made by ex-federal employees for wrongs taken by co-worker and supervisory defendants and extends to wrongs that occurred after the plaintiff left federal employment.

<u>Ybarra</u>, 2018 WL 3949972, at *12.

The court understands Plaintiff's First Amendment retaliation claim to be based on his speaking, within and outside his agency, against the alleged violations of disclosure requirements in a criminal case. Plaintiff further alleged that "the information contained broad and specific concerns about corruption or systemic abuse condoned by [OIG] officials two or more levels above his immediate chain of command, which such complaint(s) cannot likely be reasonably classified as being within . . . Plaintiff's normal job duties as a public employee."[45]  Regarding the nature of the retaliation, Plaintiff alleged that the OIG:

> retaliated by willfully and knowingly causing and allowing the *continuation* of violations of laws, rules, regulations[,] and/or [OIG] policies which were committed by the [OIG] due to the managerial actions implemented by

---

[45]    Doc. 1, Compl. p. 56.

[Defendant] Roberson and the actions/inactions taken by [Defendants Fong, Slamowitz, Timm, and Coffey] which included the failure to acknowledge receipt of Plaintiff's reported complaints and having willfully condoned and allowed such actions which further nurtured [Defendant] Roberson's 'constructive discharge' work environment for the Plaintiff.[46]

Without a doubt, Plaintiff's retaliation claim arose out of his employment relationship with the federal government precluding his pursuit of a <u>Bivens</u> action for First Amendment retaliation. This claim should be dismissed.

### IV.   Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motion be **GRANTED IN PART AND DENIED IN PART.**   The only remaining claim is Plaintiff's request for injunctive relief pursuant to 5 U.S.C. § 552a(d), (g)(1)(B).

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.   Failure to file written objections within the time mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers

---

[46]      <u>Id.</u> p. 55.

of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 28th day of January, 2019.

_____
U.S. MAGISTRATE JUDGE